**SORBEE INTERNATIONAL LIMITED, Appellant,**

v.

**CHUBB CUSTOM INSURANCE COMPANY, Chubb Group of Insurance, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 27, 1999.
Filed July 21, 1999.

Allan D. Windt, Wynnewood, for appellant.

Michael J. Plevyak, Paoli, for appellee.

Before McEWEN, President Judge, and POPOVICH and BECK, JJ.

BECK, J.:

¶ 1 We address in the context of an insurance policy the meaning of the term "misappropriation of advertising ideas." We affirm the trial court's grant of summary judgment in favor of defendant-appellee Chubb Custom Insurance Company ("Chubb").

¶ 2 Appellant Sorbee International Limited ("Sorbee") makes hard candy, and so does its competitor, Simply Lite Food Corporation ("Simply Lite"). Sorbee brought an action against Simply Lite in the United States District Court for the Eastern District of New York. Simply Lite filed a counterclaim against Sorbee in the New York litigation asserting, *inter alia,* that Sorbee improperly used the terms "low calorie," "sugar free," "fat free," and "cholesterol free" in its candy package labeling. Specifically, Simply Lite alleged that Sorbee's use of the terms violated FDA policies and regulations, that Sorbee's packaging contains "false and misleading factual misrepresentations of the nature, characteristic and qualities of its product," and that Sorbee "intentionally made its low calorie claim and other labeling violations in order to obtain an unfair advantage over its competitors, including Simply Lite." R.R. 133a–145a. Simply Lite further alleged that Sorbee used improper descriptions of serving size, contents, and the wrong print size. Simply Lite also claimed that Sorbee's actions were deceptive and unfair business practices designed to "unfairly garner the largest market share of sugar free hard candies." R.R. 144a.

¶ 3 Sorbee's request that its insurance carrier, Chubb, defend the counterclaim in the New York litigation was denied. Sorbee then brought the instant declaratory judgment action in the Court of Common Pleas of Philadelphia County seeking a declaration that Chubb had a duty to defend. Sorbee sought coverage by characterizing the counterclaim as a claim of "misappropriation of advertising ideas," since the Chubb policy covers such claims. The trial court granted summary judgment in favor of Chubb declaring that Chubb did not have a duty to defend.

¶ 4 The Chubb policy provides coverage for damages Sorbee is legally obligated to pay by reason of liability for "advertising injury." In the policy, "advertising injury":

means injury arising solely out of one or more of the following offenses committed in the course of advertising your goods, products or services:

1. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2. oral or written publication of material that violates a person's right of privacy;

3. misappropriation of advertising ideas or style of doing business; or

4. infringement of copyrighted advertising materials, titles or slogans.

R.R. 37a.

¶ 5 Sorbee asserted that Chubb had a duty to defend the Simply Lite counterclaim because the counterclaim made allegations of "misappropriation of advertising ideas." That term is not defined in the policy. After the parties submitted the matter to the trial court on a Stipulation of Facts pursuant to Pennsylvania Rule of Civil Procedure 1038.1, the trial judge held that the Simply Lite counterclaim did not allege a "misappropriation of advertising ideas," and entered judgment in Chubb's favor. Post trial motions were denied, and this timely appeal followed.

■■■ ¶ 6 The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage. *Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa.Super. 55, 639 A.2d 1208, 1210 (1994). The obligation to defend arises whenever the allegations of the complaint filed against the insured comprehend an injury that is actually or potentially within the scope of the insurance policy. *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 410 Pa. 55, 188 A.2d 320 (1963); *Britamco, supra; Aetna Cas. & Surety Co. v. Roe*, 437 Pa.Super. 414, 650 A.2d 94 (1994). The determination of whether the allegations of a complaint come within the coverage of the policy is a matter of interpreting the insurance contract, and that is a question of law that properly may be decided by the court. *Riccio v. American Republic Ins. Co.*, 453 Pa.Super. 364, 683 A.2d 1226, 1233 (1996), *aff'd*, 550 Pa. 254, 705 A.2d 422 (1997) (citing *Gamble Farm Inn, Inc. v. Selective Ins. Co.*, 440 Pa.Super. 501, 656 A.2d 142, 143 (1995)). We must look to the factual allegations of Simply Lite's counterclaim against Sorbee to see whether those allegations are actually or potentially covered by the policy, *i.e.*, whether the counterclaim alleges a "misappropriation of advertising ideas." We conclude that the counterclaim does not.

¶ 7 In order to arrive at our conclusion, we must examine the meaning of the term "advertising ideas" and if Simply Lite's counterclaim can be characterized as a claim that Sorbee misappropriated advertising ideas. A careful examination of the counterclaim leads to the conclusion that the counterclaim does not implicate "advertising ideas." Simply Lite essentially made claims of unfair competition and false advertising, asserting that Sorbee had improperly used terms to describe its product that have led to increased sales for Sorbee at the expense of Simply Lite's own sales. The terms in question are "low calorie," "sugar free," "fat free," or "cholesterol free." We do not see how, under such circumstances, Sorbee's use of the terms—although allegedly in violation of FDA policies and regulations—constitutes an advertising idea.

¶ 8 In determining what is an advertising idea, we have been unable to find, nor have counsel directed our attention to, binding definitions as used in the context of this case. We take guidance from *Thomas v. R.J. Reynolds Tobacco Co.*, 350 Pa. 262, 38 A.2d 61 (1944), in which the Pennsylvania Supreme Court described an "advertising idea" as an idea for advertising that is "novel and new," and "definite and concrete," such that it is capable of being identified as having been created by one party and stolen or appropriated by another. *Id.* at 267–68, 38 A.2d at 63–64. *See also Silver v. Television City, Inc.*, 207 Pa.Super. 150, 215 A.2d 335 (1965) (requiring "a new and novel idea reduced to concrete form" in order to warrant legal protection). The terms at issue here do not constitute an original, novel idea that was created by Simply Lite and stolen by Sorbee. They are straightforward descriptive material not formed or sequenced

in any way so as to constitute novel or special usage.

¶ 9 More to the point, nothing in the Simply Lite counterclaim suggests that Simply Lite is accusing Sorbee of stealing an original, novel advertising idea. Simply Lite is instead claiming that Sorbee has not met the requirements for using these terms to describe its product.

¶ 10 We are also guided by several relevant more recent cases. Most compelling is the decision by the United States District Court for the Eastern District of Pennsylvania in *Applied Bolting Technology Products, Inc. v. United States Fidelity & Guaranty Co.*, 942 F.Supp. 1029 (E.D.Pa.1996), *aff'd*, 118 F.3d 1574 (3d Cir. 1997).[1] In that case, the same policy language was at issue when the insured plaintiff sought coverage from the defendant insurer for underlying litigation in which plaintiff's competitor accused it of improperly using certain language to advertise its product, direct tension indicators, or DTIs, used with bolts. Specifically, the competitor accused Applied Bolting of using the latest industry standard to describe its DTIs, advertising "all DTIs made to ASTM F959–94a," when the DTIs allegedly did not conform to this industry standard. Applied Bolting's competitor made no claim that it *owned* the offending language, but simply that Applied Bolting used it improperly in its advertising, resulting in lost sales for the competitor.

¶ 11 Applied Bolting sought coverage from its insurer, claiming the underlying lawsuit made allegations of a "misappropriation of advertising ideas." The court rejected this argument:

> Reading the policy's words as they are written, ASTMF959–94a cannot be considered an "advertising idea." The policy is worded to cover "misappropriation of advertising ideas;" it is not worded, as Applied reads it, to cover "misuse in advertising of any idea regardless of the nature of that idea." Turner [the competitor] does not allege that ASTMF959–94a is or ever was an "idea" for "advertising" DTIs; rather, Turner alleges that ASTM F959–94a is a testing standard that enables a manufacturer to determine whether its DTIs are fit for sale in the marketplace ... In addition to there being no coverage under the plain meaning of the policy's terms, the courts that have considered the meaning of "misappropriation of advertising ideas" have defined it as "the wrongful taking of the manner by which another advertises its goods or services." ... Turner alleges that Applied falsely advertises compliance with an industry testing standard, thereby causing Turner to lose sales to Applied. Turner intends to present evidence that Applied's DTIs do not comply with ASTM F959–94a. Turner does not intend to argue that Applied has wrongfully taken from Turner the idea to advertise the claim "all DTIs made to ASTM F959–94a."

942 F.Supp. at 1033–34 (citations omitted). We find this reasoning to be equally applicable here. Simply Lite does not claim that Sorbee stole from Simply Lite the terms "low calorie," "sugar free," "fat free" and "cholesterol free," but that Sorbee's product does not comply with the FDA requirements for the use of these terms.

¶ 12 This case is also easily distinguishable from others in which the courts held that the insurer did owe coverage to its insured for "misappropriation of advertising ideas." For example, in *Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group*, 50 Cal.App.4th 548, 59 Cal. Rptr.2d 36 (1996), the insured Lebas was accused of trademark infringement by Guy Laroche, the owner of the trademarks "DRAKKAR NOIR" and "DRAKKAR." Lebas had allegedly used the terms to market its own products. Lebas sought coverage for the Guy Laroche lawsuit from

---

1. Although this case was in the Pennsylvania District Court, the court applied Vermont law to the dispute.

ITT Hartford, arguing that the complaint involved a claim of "misappropriation of advertising ideas." Although the court initially declared the term ambiguous, it ultimately concluded that trademark infringement was indeed included in the definition of "misappropriation of advertising ideas." The court was aided in its decision by considering the common law tort of "misappropriation," which has three elements:

(1) the plaintiff "has made a substantial investment of time, effort and money into creating the thing misappropriated such that the court can characterize that 'thing' as a kind of property right," (2) the defendant "has appropriated the 'thing' at little or no cost, such that the court can characterize defendant's actions as 'reaping where it has not sown,'" and (3) the defendant "has injured plaintiff by the misappropriation."

*Id.* at 561, 59 Cal.Rptr.2d at 43. *See also Atlantic Mutual Ins. Co. v. Badger Medical Supply Co.*, 191 Wis.2d 229, 528 N.W.2d 486 (1995) (essence of cause of action of misappropriation is the defendant's use of the plaintiff's product, into which plaintiff has put time, skill, and money; and the defendant's use of the plaintiff's product or a copy of it in competition with the plaintiff and gaining an advantage in that competition because the plaintiff, and not the defendant, has expended the energy to produce it).

¶ 13 It makes sense that a trademark infringement action would be covered by an insurance policy that applies to "misappropriation of advertising ideas" because a trademark—like the brand name DRAKKAR NOIR—is an advertising idea that may be created and "owned," and thus wrongfully taken or "stolen." The words at issue in this case were not so created and "owned" by Simply Lite, or by any other manufacturer of hard candy.

¶ 14 Similarly, in *J.A. Brundage Plumbing & Roto-Rooter, Inc. v. The Massachu-* *setts Bay Ins. Co.*, 818 F.Supp. 553 (W.D.N.Y.1993), *vacated after settlement*, 153 F.R.D. 36 (W.D.N.Y.1994), a competitor accused the insured Brundage of improperly using the trade name and mark "Roto Rooter" in its plumbing business. Brundage made a claim for insurance coverage of the lawsuit, asserting that the complaint involved an alleged "misappropriation of advertising ideas." The court held that, "in the ordinary sense of these terms, misappropriation of an 'advertising idea' would mean the wrongful taking of the manner by which another advertises its goods or services. This would include the misuse of another's trademark or trade name." 818 F.Supp. at 556. The court concluded that insurance coverage existed for the underlying lawsuit in which the insured's use of the name "Roto Rooter" was challenged. We are persuaded by the reasoning in both *Brundage* and *Lebas*.[2]

¶ 15 Sorbee, in making the contrary argument, relies on *Atlapac Trading Co. v. American Motorists Ins. Co.*, 1997 U.S.Dist.LEXIS 21943 (C.D.Cal.1997), an unpublished decision which reaches the conclusion that "misappropriation of advertising ideas" is an ambiguous term in the insurance contract and must therefore be interpreted in favor of the insured. In *Atlapac*, the insured was in the business of selling olive oil, and marketed its oil as "pure olive oil." A competitor, Tama, sued Atlapac claiming that Atlapac's products were not 100% olive oil, but rather a blend of vegetable oils, and that its use of the term "pure olive oil," coupled with lower prices, resulted in lost sales for Tama. Atlapac sought coverage from its insurer, arguing that Tama's lawsuit involved a claim of "misappropriation of advertising ideas." The court concluded that it was reasonable for the insured to have expected coverage of such claims when it purchased the insurance, in light of certain language in standard insurance policies which had previously been designed to cov-

---

**2.** Although we cite trademark cases in support of the proposition that Sorbee has not made out a case for "misappropriation of advertising ideas," we do not intend to limit the definition of advertising ideas to material that is under trademark. Trademark is merely indicia or evidence of the existence of an advertising idea.

er unfair competition claims like Tama's.[3] The court therefore allowed Atlapac's claim for coverage to proceed beyond a summary adjudication. *Id.*

¶ 16 We are not persuaded by the decision in *Atlapac.* It is true that where an ambiguity exists in the language of an insurance contract, the court may admit extrinsic evidence of the parties' expectations, and may ultimately interpret the policy in favor of the insured against the insurer. *Bateman v. Motorists Mut. Ins. Co.,* 527 Pa. 241, 590 A.2d 281 (1991); *Riccio, supra* at 1233. However, a contract is not rendered ambiguous by the mere fact that the parties do not agree upon its proper construction. *Riccio, supra.* The challenged language must be considered in the context of the entire policy; courts should read policy provisions to avoid ambiguities, if possible, and not torture language to create them. *Id.* (quoting from *Ryan Homes, Inc. v. Home Indemnity Co.,* 436 Pa.Super. 342, 647 A.2d 939 (1994)).

¶ 17 Nonetheless, Sorbee argues that the term "misappropriation of advertising ideas" is ambiguous because there is at least one dictionary definition of "misappropriate" that means "misuse" or "misapply."[4] Appellant's Brief at 10. In this sense, Sorbee argues, Simply Lite is claim-

ing that Sorbee *misuses* the terms "low calorie," "sugar free," "fat free," and "cholesterol free" because Sorbee's product does not comply with the FDA regulations and policies governing the use of those terms.

¶ 18 Even if we were to accept this argument, although we question whether Sorbee's dictionary definitions are ordinary meanings of the word "misappropriate," Sorbee's claim would fail. The policy is clearly worded to cover "misappropriation of advertising ideas." It is not worded to cover "misuse in advertising" of any idea regardless of the nature of that idea. Sorbee's use of the challenged terms is not an "advertising idea," despite the obvious fact that Sorbee uses those terms in its packaging and labeling.[5]

¶ 19 Our analysis of the allegations of Simply Lite's counterclaim and the insurance policy language at issue here leads us to conclude that the trial court did not err in entering judgment in favor of Chubb.

¶ 20 Order granting judgment affirmed.

¶ 21 POPOVICH, J., concurs in the result.

---

3. The district court based its decision at least in part on certain evidence on this issue apparently taken by judicial notice. *Atlapac, supra* at 19–20. These judicial admissions were obviously not part of the instant matter.

4. The term "misappropriate" is defined in Webster's New Dictionary as "to appropriate to a bad, incorrect, or dishonest use," and "to appropriate" is defined as 1) to take improperly, as without permission, or 2) to take for one's own or exclusive use. The term "misappropriation," in its ordinary use, clearly describes a kind of "taking." *See, e.g., Riese v. QVC, Inc.,* 1999 WL 178545, 1999 U.S.Dist. LEXIS 3746 (E.D.Pa.1999) (applying Pennsylvania law to dispute about the "misappropriation" of an idea for a television show). Simply Lite's claims of unfair competition and false advertising do not implicate the concept of "taking." Moreover, we do not view the use of the terms "low calorie," "sugar free,"

"fat free," or "cholesterol-free" as advertising ideas.

5. We attach no importance to the affidavit submitted by Sorbee from its president, Elliott Stone, asserting that it was Sorbee's "idea" to use the challenged terms to advertise its product and attempt to increase sales, and therefore, their use was an "advertising idea." R.R. 154–55a. First, the information contained in the affidavit is obvious, and does not serve to bring Simply Lite's claim within the coverage of the Chubb policy. Moreover, the affidavit is not admissible for our consideration of whether the allegations of the Simply Lite counterclaim potentially come within the Chubb policy language. *See Scopel v. Donegal Mut. Ins. Co.,* 698 A.2d 602 (Pa.Super.1997) (only facts alleged in four corners of the complaint, not those found in any subsequent discovery, are dispositive of insurer's duty to defend).