Toreatha M. WHITE, Administratrix of
the Estate of Carol Lynn White,
Deceased, Appellee

v.

KEYSTONE INSURANCE COMPANY,
Appellant.

Superior Court of Pennsylvania.

Argued March 28, 2001.
Filed April 25, 2001.

Louis E. Bricklin, Philadelphia, for appellant.

William T. Lawson, III, Philadelphia, for appellee.

Before STEVENS, MUSMANNO and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Appellant, Keystone Insurance Company (Keystone), appeals from the decree entered in favor of appellee, Toreatha White, administratrix of the estate of Carol Lynn White (White). On appeal, Keystone argues the trial court erred in determining it is responsible for coverage under the homeowner's insurance policy issued to its insured, Charles Weiner, for an incident resulting in the death of White. Af-

ter a thorough review of the record, we affirm.

¶ 2 In August 1995, the insured, Charles Weiner, entered into a contract for the purchase of a bar, owned by Joseph Silverman, the sole shareholder and director of 1252 Bar, Inc. For the protection of the bar's assets and the safety of its employees, Weiner loaned his handgun to the employees of the bar. On November 21, 1995, prior to the completion of the sale of the bar, an employee, William R. Houser, mishandled the handgun and fatally shot Carol Lynn White. On April 28, 1999, appellee instituted a declaratory judgment action against Keystone, seeking coverage for the incident under the homeowner's insurance policy issued to Weiner. On May 23, 2000, the trial court entered a decree nisi finding Keystone responsible for coverage under Weiner's policy. Keystone's post-trial motions were denied and a final decree was entered. This timely appeal followed.

■■■ ¶ 3 On appeal, Keystone presents one issue for our review, "Whether the 'business pursuits' exclusion in the homeowner's policy issued to Charles Weiner by Keystone Insurance Company applies in the case at bar and precludes coverage." (Appellant's Brief at 4.)

> When reviewing the determination of the trial court in a declaratory judgment action, our scope of review is narrow. Declaratory judgment actions follow the practice and procedure of an action in equity. Consequently, we will review the decision of the lower court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. The application of the law, however, is always subject to our review.

*O'Brien v. Nationwide Mut. Ins. Co.*, 455 Pa.Super. 568, 689 A.2d 254, 257 (1997) (citation omitted). It is well settled the interpretation of the terms of an insurance contract is a question of law. *See Sorbee Int'l v. Chubb Custom Ins. Co.*, 735 A.2d 712 (Pa.Super.1999).

■■■ ¶ 4 "Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 605, 735 A.2d 100, 106 (1999) (citations omitted).

¶ 5 The homeowner's insurance policy issued by Keystone to Weiner provides, in pertinent part:

COVERAGE E—Personal Liability

If a claim is made or a suit brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limits of liability.

. . .

1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

a. which is expected or intended by the insured;

b. arising out of business pursuits of an insured or the rental or holding for rent-

al of any part of any premises by an insured.

¶ 6 We begin by noting the relatively limited case law addressing the business pursuits exception in Pennsylvania. In *Bullock v. Pariser*, 311 Pa.Super. 487, 457 A.2d 1287 (1983), the plaintiff was bitten by a security dog on the premises owned by the defendants, who operated a day care center thereon. A liability policy was in effect for the business, and the defendants each owned an additional homeowner's policy. The trial court found coverage under the liability policy. On direct appeal, the successor to the business liability carrier argued the homeowner's policies should have been exhausted and that a setoff should have been ordered for payments made to the victim by her own disability carrier. This Court concluded the business pursuits exclusion of the polices applied to the facts of the case and found:

> The dog which attacked [the plaintiff] was owned by the partnership and kept in the store for security purposes. Furthermore, the dog lived on the business premises at all times. [The liability carrier] advance[s] no possible purpose for the presence of this dog other than the protection of the business property of the partnership. Therefore, the court below was clearly correct in holding that the "business pursuits" exclusion of the homeowner's policies precluded coverage for [the plaintiff's] injuries.

*Id.* at 1290.

■ ¶ 7 In this case, the rationale of *Bullock* is inapplicable because Weiner was not operating the bar at the time White sustained her fatal injuries. The applicability of the business pursuits exception, therefore, is not as clear as in the case of *Bullock*. The U.S. District Courts of Pennsylvania, however, provide the appropriate analysis in determining whether a particular activity falls within the business pursuits exception. "The United States Court of Appeals for the Third Circuit has held that activity encompassed within a 'business pursuits' exclusion in an insurance policy requires two elements: 1) continuity, and 2) a profit motive." *Travelers Indem. Co. v. Fantozzi*, 825 F.Supp. 80, 85 (E.D.Pa.1993), *citing Sun Alliance Ins. Co. v. Soto*, 836 F.2d 834, 836 (3d Cir.1988). *Accord Allstate Ins. Co. v. Grigaitis*, 1998 WL 34600, 1998 U.S. Dist. Lexis 3236 (E.D.Pa.1998); *Nationwide Mut. Ins. Co. v. American Reliance Ins. Co.*, 1996 WL 283645, 1996 U.S. Dist. Lexis 7214 (E.D.Pa.1996); *Northern Ins. Co. v. Mooney*, 1996 WL 135338, 1996 U.S. Dist. Lexis 3432 (E.D.Pa.1996); and *Aetna Casualty & Sur. Co. v. Ericksen*, 903 F.Supp. 836 (M.D.Pa.1995).

¶ 8 Appellant argues Weiner's effort at purchasing the bar's assets and property is a business activity in and of itself and, thus, the trial court erred in applying the two-prong *Travelers* test to the facts of this case. Appellant's argument, however, presupposes the conclusion without the appropriate analysis.

¶ 9 In this case, the record reveals that, at the time White was fatally shot by Houser, Weiner's business pursuit was speculative; thus, the exclusion in his homeowner's insurance policy is not applicable herein. The agreement of sale for the bar was executed on August 11, 1995. The agreement contained a provision by which Weiner had to secure the transfer of the bar's liquor license before settlement could occur. On August 30th, Weiner submitted the application for transfer of the license and the appropriate filing fee. Thereafter, the Pennsylvania Liquor Control Board (PLCB) had to conduct an investigation of the application and approve the transfer. The transfer was not approved until January 11, 1996, almost two

months after the fatal shooting on November 21, 1995. Furthermore, even PLCB's approval was conditioned upon the submission of additional paperwork by Weiner, who began operating the bar on January 17, 1996.

¶ 10 In light of the record, we agree with the trial court that the action of Weiner in giving a handgun to the employees of the bar, and the subsequent action of Houser in mishandling the gun, was not incident to a business pursuit. In its Opinion, the trial court aptly notes:

> Timing is unquestionably a factor here. The license approval did not come through until January 1996 and settlement did not occur until January 17, 1996. Weiner could only be said to be acting in an individual capacity when he gave his gun to Houser. Weiner had no authority over Houser, and the bar, as well as any assets, belonged to the seller and not Weiner. Therefore, this court is constrained to find that the business exclusion does not apply.

(Trial Court Opinion, McInerney, J., 10/18/00 at 4.)

¶ 11 Furthermore, we note Keystone can not bear the burden of proving Weiner had a profit motive in giving his handgun to the employees of the bar after the agreement of sale was executed, but before the settlement occurred. "[A] profit motive, 'may be shown by such activity as a means of livelihood, a means of earning a living, procuring subsistence or profit, commercial transactions or engagements.'" *Travelers Indem.*, 825 F.Supp. at 85, *quoting Sun Alliance*, 836 F.2d at 836. Keystone claims Weiner gave his handgun to the employees of the bar to protect its assets. At the time of the fatal shooting, however, Weiner was not engaged in the operation of the business and, thus, he did not secure any profit or earnings by protecting the assets or employees of the bar. Weiner did not obtain an interest in the assets of the bar, and thereafter any profits from operating the business, until January 1996. We conclude, therefore, Weiner did not have a profit motive in November 1995 when White was fatally shot.

¶ 12 In light of the foregoing discussion, we find the business pursuits exception does not apply to the facts herein. Accordingly, we affirm the trial court's determination that Keystone is responsible for coverage under the homeowner's insurance policy issued to Weiner.

¶ 13 Decree affirmed.