**CAT INTERNET SYSTEMS INC., Internet Supply Inc., Plaintiffs,**

v.

**PROVIDENCE WASHINGTON INSURANCE CO., York Insurance Company, Defendants.**

No. CIV. A. 00–3238.

United States District Court, E.D. Pennsylvania.

July 25, 2001.

Stephen Levin, Morrisville, PA, for Plaintiffs.

Eugene J. Maginnis, Jr., Dugan, Brinkmann, Maginnis & Pace, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Before me are the motion for summary judgment filed by plaintiffs CAT Internet Services, Inc. ("CAT") and Internet Supply, Inc. ("ISI") and the motion for summary judgment filed by defendants Providence Washington Insurance Company ("Providence Washington") and York Insurance Company ("York"). The motions address the duty of the defendant insurance companies to defend the plaintiff insureds against a civil action brought by an on-line retailer of magazine subscriptions, magazines.com Inc.. For the reasons stated below, I will grant plaintiffs' Motion for Summary Judgment.

This court has original jurisdiction of this civil action under 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds $75,000 and the parties are diverse.

## BACKGROUND

Plaintiffs are the owners of Internet domain names and web sites. CAT owns the domain name "magazine.com". ISI owns "adult-themed, limited access, membership and advertiser supported websites."

(Complaint ¶ 7). The two companies are Pennsylvania corporations and appear to be closely affiliated. For example, the companies share their principal place of business. Defendants provide insurance for the plaintiffs. York Insurance Company issued a business-owners policy to the plaintiffs which was in effect from June 1, 1999 to June 1, 2000. (Complaint ¶ 16). Providence Washington Insurance Company issued a commercial umbrella liability policy to the plaintiffs which was also in effect from June 1, 1999 to June 1, 2000. (Complaint ¶ 17). ISI is the named insured on the policies and CAT is listed as an additional insured. (Plaintiffs' Mem. of Law in Supp. of their Motion for Summ. J. at 8 n.4).

Both policies provide coverage for "advertising injury":

A. Coverages

1. Business Liability

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However we will have no duty to defend the insured against any "suit" seeking damages for ... "advertising injury" to which insurance does not apply ...

b. This insurance applies:...

(2) To:...

(b) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services, but only if the offense was committed in the "coverage territory" during the policy period.

(Complaint ¶ 18, Ex. B).

The policies define advertising injury as follows:

F. Liability And Medical Expenses Definitions

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

(Complaint ¶ 19, Ex. B).

The dispute before me arises from a civil action brought against CAT and ISI in Tennessee. On February 28, 2000, magazines.com Inc. filed an action in the Chancery Court for the State of Tennessee against CAT, ISI, Magazine Mall Inc., and The Electronic Newsstand, Inc. ("the Tennessee action"). The complaint in this action ("the Tennessee Complaint") alleged statutory trademark and tradename infringement, common law trademark and tradename infringement, statutory dilution and injury to business reputation, unfair competition, and violation of the Tennessee Consumer Protection Act. (Tennessee Complaint ¶¶ 38–52, Complaint Ex. A).

In the Tennessee action, magazines.com Inc., a seller of "magazine subscriptions to the public under its mark and trade name MAGAZINES.COM through its MAGAZINES.COM web site ...," objected to the use, by CAT and ISI, of the confusingly similar domain name, "magazine.com." (Tennessee Complaint ¶ 11). Magazines.com Inc., plaintiff in the underlying action, argued that "magazines.com" is much more than just a domain name; it is

also the trademark identifying "the source of origin of its services . . . ." (Tennessee Complaint ¶ 14). Magazines.com Inc. noted that "[b]y registration issued effective February 4, 2000, [magazines.com Inc.] has been granted a registration by the State of Tennessee for its MAGAZINES.COM trademark . . .," and "[b]y registration issued effective January 25, 20000, [magazines.com Inc.] has been granted a registration by the State of Tennessee for its MAGAZINES.COM trademark with design, pursuant to the provisions of Tenn.Code Ann. § 47–25–101 et seq." (Tennessee Complaint ¶ 18).

Magazines.com Inc. objected to the transfer of users who entered the domain name "magazine.com" "to either hardcore pornography or a competitor of [Magazines.com Inc.]." (Tennessee Complaint ¶ 37). It alleged that, in 1999, magazine.com users were transferred to a pornographic website owned by ISI. (Tennessee Complaint ¶ 28). Magazines.com Inc. claimed that beginning in December 1999, users of the domain magazine.com were redirected to Magazine Mall's 888ALLMAGS.COM web site, a direct competitor. (Tennessee Complaint ¶ 29). Magazines.com Inc. further alleged that beginning in January 2000, users of the magazine.com website were redirected to another competitor, The Electronic Newsstand, Inc'.s enews.com web site. (Tennessee Complaint ¶ 30).

Magazines.com Inc. served CAT and ISI with the Tennessee action on February 29, 2000. CAT and ISI claim that "the Tennessee lawsuit alleged various claims, which fell within the advertising injury definition of covered claims" provided in their insurance policies with Providence Washington and York. (Complaint ¶ 15). In conjunction with the filing of the Tennessee action, magazines.com Inc. procured a temporary restraining order ("TRO"), requiring CAT and ISI to immediately cease use of the magazine.com domain name.

CAT and ISI claim that they told Providence Washington and York about the Tennessee action on February 29, 2000. Providence Washington and York admit that they were contacted on March 1, 2000, and that CAT and ISI requested defense and indemnification for the Tennessee action.[1]

In mid-March, CAT and ISI had contact with Michael J. O'Leary, Esquire, the claims adjuster for Providence Washington and York. Before the conversations with the claims adjuster, CAT and ISI hired their own defense counsel for the Tennessee action and successfully dissolved the TRO. Initially, Mr. O'Leary thought that ISI would be covered by the policy. He thought that CAT would not be covered, because it was merely named as an additional insured[2]. Plaintiffs claim Mr. O'Leary told CAT and ISI that he had retained counsel to defend them in the Tennessee action, but would tell the counsel that CAT and ISI had hired other counsel.

After a second mid-March phone call, CAT and ISI claim Providence Washington and York did not contact them regarding coverage for the Tennessee action, so they "were compelled to retain counsel to pursue a claim against Defendants." (Complaint ¶ 29,30). Providence Washington and York deny that they did not communicate with CAT and ISI after the mid-

---

1. The issue of indemnification, for any injury that may have been inflicted by CAT and ISI, is not before this court.

2. The potential difference in coverage for ISI, the named insured, and CAT, the additional insured, is not an issue in the motions for summary judgment.

March phone calls, however they do admit that they denied coverage for the Tennessee action.

As a result of defendants' refusal to defend plaintiffs in the Tennessee action, plaintiffs filed the instant complaint, alleging breach of contract and bad faith.

## DISCUSSION

The parties agree that Pennsylvania law applies. The issues are (1) whether Providence Washington and York had a duty to defend CAT and ISI in the Tennessee action; and (2) if the duty to defend existed, whether the failure to do so constituted bad faith on the part of Providence Washington and York.

■ Under Pennsylvania law, the court interprets insurance contracts. *See Sphere Drake P.L.C. v. Variety Inc.,* 35 F.Supp.2d 421, 427 (E.D.Pa.1999)(citing *Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts & Youngs, P.C.,* 821 F.2d 216, 219 (3d Cir.1987)). The court should read the policy as a whole and construe it according to its plain meaning. *See Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,* 193 F.3d 742, 746 (3d Cir.1999)(citing *Atlantic Mut. Ins. Co. v. Brotech Corp.,* 857 F.Supp. 423, 427 (E.D.Pa.1994), aff'd. 60 F.3d 813 (3d Cir.1995)). Policy provisions should be read to avoid ambiguities, if possible, and their language should not be tortured to create ambiguities. *See St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.,* 655 F.2d 521, 524 (3d Cir.1981).

This court will first address the insurers' duty to defend and then turn to the issue of bad faith.

### Standard of Review

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Both parties agree that there are no genuine issues as to any material fact with respect to the duty to defend. (Plaintiffs' Motion for Summ. J. at 1, Defendants' Motion for Summ. J. ¶ 2, Ex. D). Both parties concede that there are genuine issues of material fact concerning bad faith. (Plaintiffs' Mem. of Law in Response to Defendants'. Motion for Summ. J. at 10, Defendants' Mem. of Law in Opp. to Plaintiffs' Motion for Summ. J. at 13).

### Duty To defend

■ An insurer's duty to defend is conceptually distinct from and legally independent of its duty to indemnify. *See CGU v. Travelers Property Casualty,* 121 F.Supp.2d 819, 822 (E.D.Pa.2000)(citing *Erie Ins. Exch. v. Transamerica Ins. Co.,* 516 Pa. 574, 533 A.2d 1363, 1368 (Pa.1987); *USX Corp. v. Adriatic Ins. Co.,* 99 F.Supp.2d 593, 611 (W.D.Pa.2000)). The duty to defend is broader than the duty to indemnify, because a duty to defend arises "whenever an underlying complaint may 'potentially' come within the insurance coverage." *Frog, Switch,* 193 F.3d at 746 (citing *Erie Ins. Exch. v. Claypoole,* 449 Pa.Super. 142, 673 A.2d 348, 355 (1996)). If a single allegation of a complaint is potentially covered by a policy, an insurer has an obligation to defend its insured against all claims until there is no possibility of recovery for a covered claim. *See Frog, Switch,* 193 F.3d at 746. (citing *Erie Ins. Exch. v. Transamerica, Ins. Co.,* 533 A.2d 1363 (1987)).

■ When determining whether an insurer has a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured. *See Frog, Switch,* 193 F.3d at 746. (citing *Biborosch v. Transamerica Ins.*

*Co.*, 412 Pa.Super. 505, 603 A.2d 1050, 1052 (1992)). Pennsylvania courts have emphasized that the "particular cause of action pleaded is not determinative of whether coverage has been triggered .... Rather, it is necessary to look at the factual allegations contained in the complaint." *Lang Tendons, Inc. v. Northern Insurance Company of New York*, 2001 WL 228920, 4 (E.D.Pa.2001)(citing *Mutual Ben. Ins. Co. v. Haver*, 555 Pa. 534, 725 A.2d 743, 745 (1999)). To decide whether an insurer has a duty to defend, a court first examines the scope of the policies' coverage, and then looks to the factual allegations in the underlying complaint.

### Scope of Policy Coverage

■ Providence Washington's and York's duty to defend depends upon whether the underlying complaint alleges an "advertising injury." The policies oblige the insurers to "pay those sums that the insured becomes legally obligated to pay as damages because of...'advertising injury'...." (§ A.1.a). The insurers "have the right and duty to defend the insured against any 'suit' seeking those damages." (§ A.1.a). Advertising injury is defined as:

F. Liability And Medical Expenses Definitions

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

(Complaint ¶ 19, Ex. B).

Federal cases have addressed the applicability of these standard categories to a variety of torts, including trademark infringement. *See Frog, Switch*, 193 F.3d at 746. The Tennessee Complaint alleged statutory trademark and tradename infringement, common law trademark and tradename infringement, statutory dilution and injury to business reputation, unfair competition, and violation of the Tennessee Consumer Protection Act. The complaint alleged CAT and ISI's "unauthorized use of the trademark and domain name MAGAZINE.COM, a mark and domain name which is a colorable imitation of Plaintiff's MAGAZINES.COM mark, trade name and domain name and which is likely to be confused with Plaintiff's MAGAZINES.COM mark ...." (Tennessee Complaint ¶ 39, Complaint Ex. A).

The threshold question is whether these claims are an "advertising injury" covered under the policies' advertising injury categories. The Third Circuit has suggested that under Pennsylvania law the advertising injury provisions cover trademark infringement, as a "misappropriation of an advertising idea or style of doing business." In *Frog, Switch*, Chief Judge Becker indicates, without deciding, that this standard advertising injury policy provision covers trademark infringement, because a trademark "is a way of marking goods so that they will be identified with a particular source." *Frog, Switch*, 193 F.3d at 749. The Court noted "[r]ecent dicta from the Pennsylvania Superior Court suggests this to be the case." *Frog, Switch*, 193 F.3d at 749 n. 7 (citing *Sorbee Int'l Ltd. v. Chubb Custom Ins. Co.*, 735 A.2d 712, 716 & n. 2 (Pa.Super.Ct.1999)). We will follow *Frog, Switch*'s lead and likewise predict that the Pennsylvania Su-

preme Court would rule that trademark infringement is a covered offense.

Chief Judge Becker emphasizes that although a claim may be labeled "trademark infringement," courts must analyze coverage on a case-by-case basis, using the "reasonable insured" standard of *Granite State Insurance Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316 (3d Cir.1995). *Frog, Switch*, 193 F.3d at 747.

### Trademark Infringement

■ The Tennessee Trade Mark Act of 2000's Infringement section provides liability for:

> any person who uses, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this part in connection with the sale, distribution, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, mistake or deception as to the source of origin of such goods or services.

(TN ST § 47–25–512).

The Tennessee Complaint alleged that "unauthorized use of the trademark and domain name MAGAZINE.COM, a mark and domain name which is a colorable imitation of Plaintiff's MAGAZINES.COM mark, trade name and domain name and which is likely to be confused with Plaintiff's MAGAZINES.COM mark, trade name and domain name, constitutes trademark and trade name infringement . . . ." (Tennessee Complaint ¶ 39, Complaint Ex. A). These allegations fit squarely within the Tennessee statutory description of trademark infringement.

I find that the allegations of the Tennessee Complaint, unlike those in the complaint underlying *Frog, Switch*, do allege trademark infringement that is a "misappropriation of an advertising idea or style

of doing business." In the underlying action of *Frog, Switch*, ESCO sued the Frog, Switch and Manufacturing Co. ("Frog"). ESCO's complaint alleged that a Frog employee, a former employee of Amsco, "misappropriated . . . trade secrets and confidential business information" related to a dipper bucket product line, acquired from Amsco by ESCO, by giving this information to Frog. *Id.* at 745. ESCO accused Frog of unfair competition based on the misappropriated information by engaging in false advertising and reverse passing off. *See id.* Frog requested that its insurers, Travelers Insurance Co. ("Travelers") and United States Fire Insurance Co. ("USFIC") defend Frog in the ESCO suit. *Id.* Travelers and USFIC denied a duty to defend, arguing that Frog's insurance policies did not cover the alleged offenses. *Id.* Frog brought an action in federal court against the insurance companies for breach of contract and bad faith. The District Court granted defendant Travelers' motion for summary judgment and defendant USFIC's motion to dismiss. The Third Circuit affirmed.

The Third Circuit found that "trademark infringement differs from the allegations in ESCO's complaint." *Id.* at 749. The alleged infringement related to a design idea, not a recognizable mark of origin. *See id.* The circuit court noted, "the underlying complaint does not allege that what the insured took was itself an idea about identifying oneself to customers. The complaint did not allege that the misappropriated dipper bucket design served as an indication of origin, or that ESCO/Amsco's identifying marks were misused." *Id.* at 749 n. 7. The circuit court found that the factual allegations did not involve the misappropriation of an advertising idea, as it did not allege "that Frog took an idea about advertising dipper buckets . . .; it alleged that Frog took the

dipper bucket design itself and lied about the design's origin." *Id.* at 749.

By contrast, the Tennessee complaint alleges the misappropriation of the trademark itself, "magazines.com". As the *Frog, Switch* Court explained, "A trademark depends for its effectiveness on communicating a message to consumers about the marked good, which is the essence of advertising." 193 F.3d at 749 (citing *Industrial Molding Corp. v. American Manufacturers Mut. Ins. Co.*, 17 F.Supp.2d 633, 637–38 (N.D.Tex.1998)). Unlike the underlying complaint of *Frog, Switch*, the Tennessee complaint does allege "that what the insured took was itself an idea about identifying oneself to customers," and that "magazines.com" "served as an indication of origin ...." 193 F.3d at 749. n.7. Magazines.com Inc. emphasized that its domain name was a registered trademark identifying "the source of origin of its services ...." (Tennessee Complaint ¶ 14). Therefore, under *Frog, Switch*, the trademark infringement alleged by the Tennessee Complaint constitutes "misappropriation of advertising ideas or style of doing business."

### Causation

While not finding trademark infringement in *Frog, Switch*, Chief Judge Becker opined on the issue of causation. Standard insurance policies provide coverage for advertising injuries "caused by an offense committed in the course of advertising your goods, products or services." (Complaint ¶ 18), 193 F.3d at 750 n. 8. The chief judge noted that the issue of causation has created considerable confusion for courts. In an effort to the resolve confusion, the chief judge advocated the approach of courts "requiring that the injury be complete in the advertisement, requiring no further conduct" in order to be covered. 193 F.3d at 750 n. 8.

In *Frog, Switch*, the injury was complete in the misappropriation of the dipper bucket design, not in the advertisement of the dipper bucket. The *Frog, Switch* Court noted, "the complaint does not allege that Frog misappropriated methods of gaining customers; it alleges that Frog misappropriated information about the manufacture of dipper buckets and then advertised the resulting product." *Id.* at 748. Although Amsco's underlying complaint did claim that Frog's advertising contributed to injuries suffered, it did not fulfill the causation required to prompt a duty to defend. *Id.*

In the instant action, the injury was complete in a covered offense, trademark infringement, while in *Frog, Switch*, the injury was complete in a non-covered offense. The injury described in the Tennessee Complaint was triggered by the "misappropriation of an advertising idea." Thus, the Tennessee Complaint describes an injury that was complete in the advertisement, requiring no further conduct. *See id.* at 750 n. 8.

Defendants contend that *Sorbee Int'l Ltd. v. Chubb Custom Ins. Co.*, 735 A.2d 712, 716 & n. 2 (Pa.Super.Ct.1999), undercuts plaintiffs's advertising injury claim. Defendants argue that "the [*Sorbee*] court ruled that the use of commonly used words was not an advertising idea." (Defendants' Mem. of Law. in Supp. of Motion for Summ. J. at 9). The *Sorbee* Court, however, stressed that nothing in the underlying complaint "suggests that Simply Lite is accusing Sorbee of stealing an original, novel advertising idea." *Id.* at 715. The *Sorbee* Court noted that the allegedly misappropriated phrases, such as fat free, " are straightforward descriptive material not formed or sequenced in any way so as to constitute novel or special usage." *Id.* at 714, 715. Although "magazines" is not a novel word, magazines.com is a trademarked domain name. Magazines.com

Inc. alleged infringement on their trademark that identified "the source of origin of its services ...," not merely the misuse of a common phrase. (Tennessee Complaint ¶ 14). In fact, the *Sorbee* Court noted, "Trademark is ... indicia or evidence of the existence of an advertising idea." *Sorbee*, 735 A.2d at 716 n. 2. Contrary to defendants' contentions, *Sorbee* supports the conclusion that the Tennessee Complaint alleged "misappropriation of an advertising idea."

Although other instances of trademark infringement and other offenses are alleged in the underlying complaint, the current plaintiffs have shown that one allegation potentially fell within the coverage of the policies. Therefore, Providence Washington and York had a duty defend against all claims in the Tennessee action until there was no possibility of recovery for the covered claim. *Frog, Switch*, 193 F.3d at 746.

### Bad Faith

Both parties concede that there are genuine issues of material fact concerning bad faith. (Plaintiffs' Mem. of Law in Response to Defendants'. Motion for Summ. J. at 10, Defendants' Mem. of Law in Opp. to Plaintiffs' Motion for Summ. J. at 13). Therefore, I will deny defendants' motion for summary judgment on the issue of bad faith.

**AND NOW**, this 23rd day of July, 2001, it is **ORDERED** that the plaintiffs' Motion for Summary Judgment (Docket Entry No. 14) is **GRANTED** and the defendants' Motion for Summary Judgment (Docket Entry No. 21) is **DENIED**.