J-A25024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DEBRA K. CHILLAS, LORI A. MCNAUGHTON AND MICHELE S. ACHEY | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| MICHAEL B. REEDY | : : | No. 548 MDA 2019 |
| Appellant | : | |

Appeal from the Order Entered March 13, 2019
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2015-01290

BEFORE:  STABILE, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED OCTOBER 15, 2020**

Michael B. Reedy ("Reedy") appeals from the order granting declaratory judgment in favor of Debra K. Chillas, Lori A. McNaughton, and Michele S. Achey's (collectively, "Sisters"). We affirm.

The parties to this action are siblings. Their parents, Marlin and Guianna Reedy ("Father" and "Mother," respectively), owned 120 acres of land in Newmanstown, Pennsylvania ("the Property"). The Property included two houses and approximately 45 acres of tillable farmland.

In March 2010, Father executed a trust agreement (the "Trust Agreement") creating the Pine Hill Farms Trust (the "Trust"). Under the Trust Agreement, Mother and Father transferred their interest in the Property into the Trust, with Father, Mother, and Reedy serving as Trustees. The Trust Agreement provided that upon Father's death, the Sisters would become

additional Trustees, and Mother would continue to live on the Property with the Trust providing for her expenses. Upon Mother's death, the Trust would be divided into equal shares among Reedy and the Sisters. The Trust Agreement further stipulated that the Property was subject to a lease agreement (the "Lease Agreement"), described more fully below, between Father, Mother, and Reedy. The Sisters did not take part in the creation, negotiation, or execution of either the Trust Agreement or the Lease Agreement.

Father, Mother, and Reedy then entered into the Lease Agreement, with Father and Mother as landlords and Reedy as tenant. The Lease Agreement provided Reedy the right during its term to farm and reside on the Property. The term of the Lease Agreement was to continue until one of three conditions occurred: (1) Reedy failed to use the Property for farming directly or indirectly for one year; (2) Reedy died; or (3) 29 years passed. The Lease Agreement did not require Reedy to pay rent. It also provided that Father and Mother would continue to reside in the main house on the property, but upon their deaths, Reedy could then collect any rents from sub-letting either the house they occupied or the house he lived in.

The Lease Agreement further specified that, during Father's lifetime, he would be responsible for the payment of the costs and expenses associated with the Property, including real estate taxes, assessments, insurance, utilities, maintenance, and repairs. However, upon Father's death, Reedy would assume responsibility for the cost of maintenance and ordinary repairs

to the Property, while the landlord, as defined in the Lease Agreement, would remain liable for real estate taxes, assessments, insurance, capital improvements, and extraordinary repairs.

The Lease Agreement further provided that the lease would be assumed by the Trustees of the Trust Agreement upon the death of the surviving parent. Specifically, the Lease Agreement stated:

> This Lease shall not be assignable but will be assumed by the Trustees of the Pine Street Trust upon the death of the surviving Landlord. Upon such assumption said Trustees shall become the Landlord and shall have all of the rights, duties and responsibilities as if the original Landlord herein.

Lease Agreement, at para. 14(f). Thus, the Trustees, which included Reedy and the Sisters, would assume the role of landlords of the Property upon the death of the surviving parent.

In October 2014, following the deaths of Father and Mother and in accordance with the Trust Agreement, the Property, subject to the Lease Agreement, was distributed to the Sisters and Reedy in fee simple as tenants in common, with each receiving an equal share. As a result, the Sisters and Reedy became successor landlords of the Property, and thus became liable for real estate taxes, assessments, insurance, capital improvements, and extraordinary repairs on the Property. Under the Lease Agreement, the Sisters, as successor landlords, are not entitled to any rents or other profits from the Property.

The Sisters filed this suit in July 2015, seeking a declaration that the Lease Agreement is void due to, *inter alia*, unconscionability and lack of consideration. Reedy later moved for summary judgment in March 2017, and the trial court denied the motion. The court ultimately held a hearing and granted declaratory judgment in favor of the Sisters, in March 2019, and declared the Lease Agreement unconscionable and lacking consideration. This timely appeal followed. Reedy has raised the following issues for our review:

1. Whether the Lower Court erred as a matter of law in declaring the Lease Agreement invalid and unenforceable, including based on [the Sisters'] claims of unconscionability, lack of consideration, and illusory[?]

2. Whether the Lower Court erred in denying Mr. Reedy's Motion for Summary Judgment because there is no material issue of fact or law whether there is no merit to [the Sisters'] claims that the terms of the [L]ease [A]greement are unconscionable, illusory, lacking consideration; and impose an unreasonable restraint on alienation of the [P]roperty[?]

3. Whether the Lower Court erred when it did not rule/opine on Mr. Reedy's affirmative defense of laches in his Motion for Summary Judgment[?]

Reedy's Br. at 6 (suggested answers omitted).

"In reviewing a declaratory judgment action, we are limited to determining whether the trial court clearly abused its discretion or committed an error of law." **Murphy v. Martini**, 884 A.2d 262, 265 (Pa.Super. 2005) (quoting **Bianchi v. Bianchi**, 859 A.2d 511, 515 (Pa.Super. 2004)). "[W]e will review the decision of the lower court as we would a decree in equity and set aside the factual conclusions of that court only where they are not

supported by adequate evidence." *Id.* (quoting *White v. Keystone Ins. Co.*, 775 A.2d 812, 813 (Pa.Super. 2001)). However, the application of the law is always subject to our review. *Id.*

Reedy first contends that the trial court erred in declaring the Lease Agreement invalid and unenforceable based on the Sisters' claims of unconscionability and lack of consideration. Reedy argues that the Lease Agreement was freely entered into between Father, Mother, and Reedy and that there was no evidence that Father, Mother, and Reedy were on unequal ground or not competent at the time that the Lease Agreement was executed. Reedy's Br. at 15, 21-22. Reedy further contends that the Sisters voluntarily accepted ownership of the Property with full knowledge of the Lease Agreement and that their ownership of the Property would be subject to the Lease Agreement. *Id.* at 22. Reedy cites to Section 250.104 of Pennsylvania's Landlord-Tenant Act, which states that "[a]ny person who acquires title to real property by descent or purchase shall be liable to the same duties and shall have the same rights, powers and remedies in relation to the property as the person from whom title was acquired." 68 P.S. § 250.104. According to Reedy, since the Sisters acquired the Property (that was subject to the Lease Agreement) through descent, they are bound by the terms of the Lease Agreement pursuant to 68 P.S. § 250.104. Reedy's Br. at 17.

Further, Reedy asserts that there was adequate consideration in the Lease Agreement, namely that each party committed itself to do something - Reedy was to continue to farm the Property and Father and Mother, among

other things, bore the responsibility for certain expenses of the Property. *Id.* at 25. Reedy asserts that upon the death of his parents and his Sisters' acceptance of ownership of the Property, he and his Sisters became the landlords under the Lease Agreement. *Id.* at 28. Reedy argues that his obligations under the Lease Agreement are not optional – if he does not continue to farm the Property, he is in breach of the Lease Agreement. *Id.* Therefore, according to Reedy, the Lease Agreement is not lacking in consideration. *Id.*

Conversely, the Sisters contend that the Lease Agreement is procedurally unconscionable because they had no input in the formation of the Lease Agreement. Sisters' Br. at 11. The Sisters maintain that the Lease Agreement was entered into without them having any meaningful choice, since they had no part in its creation, negotiation, or execution, as the Lease Agreement was between Reedy, Father and Mother. *Id.* at 7. The Sisters assert that they did not assent to any of the contract terms; rather, the Trust and Lease Agreements, by operation of law, placed the Sisters in the position of landlords. *Id.* at 9-10.

The Sisters further argue that Lease Agreement is substantively unconscionable because the terms of the Lease Agreement grossly favor Reedy. *Id.* at 10. Specifically, the Sisters contend that the Lease Agreement allows Reedy to live on the Property for free while the Sisters are responsible for 75% of the taxes and undefined capital improvements. *Id.* The Sisters state that they unreasonably receive no benefit while they subsidize Reedy's

farming of the land. *Id.* Therefore, according to the Sisters, the Lease Agreement is unconscionable because it gives Reedy as tenant the ability to farm the Property for 29 years without paying rent while the Sisters must bear significant expenses. *Id.* at 7.

The Sisters also assert that contrary to Reedy's contention, they did not choose to dissolve the Trust and accept the terms of the Lease Agreement. Rather, according to the Sisters, the ownership of the Property as it exists today occurred as a matter of law. *Id.* at 14. The Sisters argue that they had no negotiating power at all and that this lack of negotiation power equates to the Lease Agreement lacking consideration. *Id.* at 14-15.

A lease is a contract and must be interpreted according to the principles of contract law. *Stein Revocable Trust v. Gen. Felt Indus., Inc.*, 749 A.2d 978, 980 (Pa.Super. 2000). "The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001). "The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself." *Id.* Further, we "do not assume that a contract's language was chosen carelessly, nor do [we] assume that the parties were ignorant of the meaning of the language they employed." *Id.*

The doctrine of unconscionability "has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Cardinal v. Kindred Healthcare, Inc.*, 155 A.3d 46, 53 (Pa.Super.

2017) (quoting **MacPherson v. Magee Mem. Hosp. for Convalescence**, 128 A.3d 1209, 1221 (Pa.Super. 2015) (*en banc*)). The first element – lack of meaningful choice – has become known as procedural unconscionability, while the unreasonableness prong is called substantive unconscionability. **Salley v. Option One Mortg. Corp.**, 925 A.2d 115, 119 (Pa. 2007). Whether a contract is unconscionable is a question of law for the court. **Id.** at 120. Our standard of review is *de novo*, and our scope of review is plenary. **Thibodeau v. Comcast Corp.**, 912 A.2d 874, 886 (Pa.Super. 2006).

Instantly, the trial court found that the Lease Agreement was procedurally and substantively unconscionable because the terms of the Lease Agreement were starkly unfavorable to the Sisters, and the Sisters had no participation in the negotiation or execution of the Lease Agreement. Trial Ct. Op., 3/13/19, at 18. The court determined that the Sisters only became aware of the Lease Agreement after Father's death. **Id.** The trial court recognized that Father, Mother, and Reedy were the only parties named in the Lease Agreement. **Id.** at 19. The court, however, also determined that the plain language of the Lease Agreement anticipated the Sisters' interests as future landlords of the Property. **Id.** The trial court concluded that the Sisters clearly had an interest at the time that the Lease Agreement was negotiated, but had no meaningful choice as to the terms of the Lease Agreement. **Id.**

Further, the court found that under the Lease Agreement, Reedy is not obligated to pay rent and any rent collected upon subletting the Property is retained by Reedy. The Sisters are not entitled to any rent even though they

are landlords of the Property and are responsible, in part, for the expenses. *Id.* at 24. The trial court considered the testimony of Thomas I. Siegel, who was qualified as an expert in accounting and farming. Mr. Siegel testified that the Lease Agreement was unusual in that it did not provide for a source of income, and stated that he had never seen any type of lease that failed to provide some income and obligated the landlord to only pay expenses. *Id.* at 9, citing N.T., 1/29/18, at 42. Mr. Siegel stated that the economic impact of the Lease Agreement is that the landlord is burdened with paying expenses with no offset for income so it is a detriment to value. *Id.* Accordingly, the trial court concluded that the Lease Agreement was unconscionable and therefore, unenforceable. *Id.* at 24.

We agree with the trial court that the Lease Agreement is unconscionable. It was undisputed that the Sisters had no involvement in the formation or execution of the Lease Agreement. As such, they had no meaningful choice regarding its terms. Rather, they merely acquired the Property and became subject to the lease terms by operation of law. As the plain language of the Lease Agreement clearly states, the Sisters assumed the lease and they became landlords of the Property after the death of their surviving parent. Although they were not original parties to the Lease Agreement, they became subject to the Lease Agreement when they were placed into the position of landlords of the Property, without having any input in the Lease Agreement's formation or terms.

As a result, the Sisters must pay 75% of enumerated expenses – real estate taxes, assessments, insurance, capital improvements, and extraordinary repairs – and receive no immediate benefit, while Reedy continues to live on the Property without paying rent and with sole entitlement to proceeds from the farm and any subleases. Respectfully, we believe that the Dissent's contention that the Sisters could avoid this situation by disclaiming their interest in the property supports our conclusion. The Dissent's position would put Sisters to a choice: either they accept the property with responsibility for enumerated expenses and subject to Reedy's possession of it, while receiving no income from Reedy's leasehold and having no possession of the property for years to come, or they disclaim their entire interest in the property and in so doing, forgo their inheritance. This is a Hobson's choice.

Since the terms of the Lease Agreement were starkly unfavorable to the Sisters and the Sisters had no meaningful choice regarding the acceptance of its provisions, the trial court did not err in finding the Lease Agreement unconscionable. Since we affirm the finding of unconscionability, we do not address the issue of consideration.

Reedy next contends that the trial court erred in denying his motion for summary judgment because "there [was] no material issue of fact or law whether there is no merit to [the Sisters'] claims that the terms of the [L]ease [A]greement are unconscionable, illusory, lacking consideration; and impose an unreasonable restraint on alienation of the [P]roperty." Reedy's Br. at 6.

Reedy acknowledges that much of his argument relevant to this issue was previously set forth in his first issue raised on appeal. *Id.* at 29. In denying Reedy's motion for summary judgment, the trial court found that there were genuine issues of material fact as to the enforceability of the terms of the Lease Agreement based on the state of record at that time. Trial Ct. Op., 7/13/17, at 10. The court further found that the terms of the Lease Agreement were unclear as to the partition of obligations between the parties. *Id.* Therefore, the trial court denied Reedy's motion for summary judgment. *Id.*

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. ***Nicolaou v. Martin***, 195 A.3d 880, 891 (Pa. 2018) (citing Pa.R.C.P. 1035.2(1)). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party." *Id.* "Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment." ***Straw v. Fair***, 187 A.3d 966, 982 (Pa.Super. 2018) (citation omitted).

Here, the motion for summary judgment was filed almost one year before the evidentiary hearing. We agree with the trial court that, at that time, there were genuine issues of material fact precluding the entry of summary judgment, including disputes regarding the terms of the Lease Agreement (such as the parties' responsibilities for the expenses). Therefore, summary

judgment would have been inappropriate at that time, and the trial court did not err in denying Reedy's motion for summary judgment.

Finally, Reedy contends that the trial court erred when it failed to rule on his affirmative defense of laches in his motion for summary judgment. Reedy asserts that the Sisters were fully aware of the terms of the Lease Agreement while the Trust was still in effect and they knew of the obligations associated with ownership of the Property. Reedy's Br. at 39. Reedy maintains that the Sisters agreed to accept ownership of the Property knowing their obligations and are simply unhappy with the Lease Agreement. *Id.* at 39-40.

The Sisters counter that they were not aware of the terms of the Lease Agreement until the death of Father in November 2010 and they were not bound to the Lease Agreement until October 2014 when Mother died. Sisters' Br. at 15. The Sisters further argue that Reedy has not shown any prejudice to him resulting from the Sisters' alleged failure to bring the lawsuit at an earlier time. *Id.* at 16.

"The doctrine of laches is an equitable bar to the prosecution of stale claims[.]" *Fulton v. Fulton*, 106 A.3d 127, 131 (Pa.Super. 2014). Laches bars relief when the complaining party delays in bringing a claim, to the prejudice of another. *Id.* Reedy has not asserted any claim of that he was prejudiced by any delay by the Sisters in bringing their claims. Accordingly, this issue is without merit.

Order affirmed.

Judge Musmanno joins the Memorandum.

- 12 -

Judge Stabile files a Dissenting Memorandum Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2020