OLD GUARD INSURANCE COMPANY

v.

Walter E. & Priscilla D. SHERMAN, Appellants,

v.

Jamie T. and Candy L. Spencer, Henry U. Sherman, Kelly M. Sherman, Sherman Family Farm Partnership, Henry U. Sherman t/d/b/a Hen–Kel Farms, Warner's Tractor and Equipment Company, Inc. t/d/b/a Warner's Tractor Company, Massey Ferguson, Inc. and Agco Corporation.

Old Guard Insurance Company

v.

Walter E. Sherman; and Priscilla D. Sherman; and Jamie T. Spencer; and Candy L. Spencer; and Henry U. Sherman; and Kelly M. Sherman; and Sherman Family Farm Partnership; and Henry U. Sherman t/d/b/a Hen–Kel Farms; and Warner Tractor Company; and Massey–Ferguson, Inc.; and Agco Corporation

Appeal of Jamie T. and Candy L. Spencer, Appellants.

Superior Court of Pennsylvania.

Submitted Oct. 12, 2004.

Filed Dec. 30, 2004.

 

William A. Hebe, Wellsboro, for Sherman, appellant.

Henry U. Sherman, appellee, Pro Se.

Kelly M. Sherman, appellee, Pro Se.

Thomas S. Brumbaugh, Harrisburg, for Old Guard, appellee.

David B. Keeffe, Sayre, for Spencer, appellee.

Albert M. Saltz, Wayne, for Warner's Tractor, appellee.

Before: FORD ELLIOTT, JOYCE, and BECK, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 These two appeals challenge the trial court's order granting judgment on the pleadings to Old Guard Insurance Company ("insurer") in this declaratory judgment action. Insurer filed the declaratory judgment action seeking a declaration that it had no duty to defend and/or indemnify Walter E. Sherman and Priscilla D. Sherman ("insureds") in the underlying wrongful death and survival action. Appellants insureds filed the appeal docketed at No. 605 MDA 2004, claiming trial court error in granting the motion. Appellants Jamie T. Spencer and Candy L. Spencer ("parents") filed the appeal docketed at No. 639 MDA 2004, challenging the grant of judgment on the pleadings, and also claiming the trial court erred in denying their motion for reconsideration and motion to amend their answer to the complaint in declaratory judgment.

¶ 2 The trial court granted the motion for judgment on the pleadings because it found that insureds' policy contained a business exclusion provision that excluded coverage for bodily injury or property damage "[a]rising out of or in connection with a 'business' engaged in by an 'insured.'" The court also denied parents' motion for reconsideration and motion to

amend. Following oral argument, we have consolidated these appeals *sua sponte*, finding that they both require this court to undertake the same analysis. Finding no error, we affirm.

¶ 3 The factual and procedural history follows. Joshua Spencer died on May 10, 2000 while working on a farm located at 937 Roseville Road, Mansfield, Tioga County, Pennsylvania. Joshua, who was 15 years old at the time of death, was operating a tractor on the farm at the Roseville Road Property when the tractor slid into a manure pit, where Joshua died from asphyxiation. Parents, individually and as co-administrators of his estate, therefore filed a wrongful death and survival action, naming insureds; their son Henry U. Sherman and his wife Kelly M. Sherman; the Sherman Family Farm Partnership; Henry U. Sherman t/d/b/a Hen–Kel Farms; Warner Tractor and equipment, Inc. t/a/d/b/a Warner's Tractor Company; Massey Ferguson, Inc., and Agco Corporation, Massey Ferguson's successor in interest, as defendants.

¶ 4 In their complaint, parents alleged the following facts that are relevant to our disposition of this appeal:

13. The defendant is Walter E. Sherman who is now and was at all times averred herein an, [sic] adult individual residing at R.R. # 3, Box 990, Mansfield, PA 16933.

14. The defendant, Walter Sherman, was an owner of the lands where the manure pit was located and where the fatality occurred during a period of time beginning in the 1970's and continuing through February 11, 2000.

15. The defendant, Walter Sherman, built, constructed, and designed the manure pit.

16. The defendant, Walter E. Sherman was responsible for maintaining the manure pit, improving its safety, utility, and its function up through the time of the sale of the lands in February of 2000.

17. The defendant Walter E. Sherman, even after the sale of the lands, remained involved, and in control of the operation, maintenance, and safety of the manure pit.

18. The defendant, Priscilla Sherman who is now and was at all times averred herein an, [sic] adult individual residing at R.R. # 3, Box 990, Mansfield, PA 16933.

19. The defendant, Priscilla Sherman, built, constructed, and designed the manure pit.

20. The defendant Priscilla Sherman was responsible for maintaining the manure pit, improving its safety, utility, and its function up through the time of the sale of the lands in February of 2000.

21. The defendant Priscilla Sherman, even after the sale of the lands, remained involved, and in control of the operation maintenance and safety of the manure pit.

. . . .

27. The defendant is the Sherman Family Farm Partnership, a farming partnership with a place of business at 937 Roseville Road, Mansfield, PA 16933. Upon information and belief the Sherman Family Farm Partnership has as partners Walter Sherman, Priscilla Sherman, Hank U. Sherman, and Kelly M. Sherman and said partnership does business in Tioga County, Pennsylvania and in Bradford County, Pennsylvania as well as in other neighboring counties and communities.

28. The Sherman Family Farm Partnership owned or controlled the real estate on which the manure pit where plaintiff's decedent was asphyxiated through the 1990s and plaintiff asserts up through and including the time of plaintiff's decedent's death. Additionally, the Sherman Family Farm Partnership was responsible for providing safety to contractors and others who came on the farm up through and including the time of plaintiff's [sic] decedent's death.

Complaint, 5/8/02 at 4–5, 6–7.

¶ 5 Count V of parents' complaint brought a wrongful death claim against insured Walter Sherman, alleging 17 counts of negligence. (*Id.,* ¶ 93(a)-(q) at 30–34.) Paragraphs 94–103 of Count V further averred that Walter Sherman knew or should have known of the dangerous conditions existing in and around the manure pit as a result of years of wear on the concrete ramp and poor condition of the tractor tires; that even after the transfer of the farm, Walter Sherman continued to work on the farm as a proprietor and supervisor up until the time of plaintiffs' decedent's death; and that Walter Sherman failed to warn Hank and Kelly Sherman, who purchased the farm, of the potential dangers despite his awareness thereof. (*Id.,* ¶¶'s 94–103 at 34–37.) Count VI of the complaint is a survival action brought against Walter Sherman, while Counts VII and VIII are wrongful death and survival actions brought against insured Priscilla Sherman, and repeat the allegations brought against insured Walter Sherman. (*Id.,* ¶¶'s 108–120 at 38–45; ¶¶'s 121–124 at 46–47.) Finally, Counts IX and X state wrongful death and survival actions against the Sherman Family Farm Partnership, which, as set forth in ¶ 27, *supra,* is alleged to have included insureds. Counts IX and X repeat for the third time the allegations of negligence and breach of duty contained in Counts V through VIII. (*Id.,* ¶¶'s 125–131 at 47–51; ¶¶'s 132–135 at 51–52.)

¶ 6 The Old Guard Insurance policy ("policy") at issue herein covered the period January 1, 2000 to January 1, 2001. Section I of the Policy describes Perils Insured Against, while Section II describes Liability Coverages. The Exclusions subsection of Section II provides:

1. **Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to 'bodily injury' or 'property damage':

    . . . .

    (b) Arising out of or in connection with a 'business' engaged in by an 'insured.' This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the 'business';

    . . . .

Old Guard Insurance Policy No. HO–249018 DB at 12. The Definitions Section of the policy defines a "business" to include "trade, profession or occupation." (*Id.* at 1.)

¶ 7 After reviewing parents' complaint in view of the business exclusion in the homeowners' policy, the trial court granted insurer's motion for judgment on the pleadings in its declaratory judgment action, finding that insurer had no duty to defend or indemnify insureds. Insureds filed a timely appeal, in which they raise the following issue: "Did the trial court err in concluding that homeowners were not entitled to coverage under their homeowners' insurance policy based upon a 'business' exclusion when homeowners had ceased

their involvement in the business in question prior to the incident giving rise to the underlying claim?" (Insureds' brief, No. 605 MDA 2004 at 5.) Parents likewise filed a timely appeal, in which they raise the following issues:

1. Did the trial court commit an error of law and/or abuse of discretion in concluding that [insurer] had no duty to defend and indemnify [insureds] in the underlying civil action as a result of the business pursuits exclusion to the policy-at-issue when the complaint in the underlying civil action is, at the very least, inconclusive as to the issues of profit motive and continuity of service?

2. Did the trial court commit an error of law and/or abuse of discretion by denying [parents'] motion for leave of court to file an amended answer where no surprise or prejudice would result to [insurer] from the filing of the amended answer and where the amended answer would aid the trial court in determining whether any of the facts alleged in the complaint in the underlying civil action potentially supported a recovery that fell outside of the business pursuits exclusion to the policy-at-issue?

3. Did the trial court commit an error of law and/or abuse of discretion by denying [parents'] motion for reconsideration of the trial court's order of March 22, 2004, especially in light of the factual allegations made in [parents'] amended answer?

Parents' brief, No. 639 MDA 2004 at 5–6.

Our scope and standard of review of orders granting judgment on the pleadings are well-established.

A motion for judgment on the pleadings is similar to a demurrer. It may be entered where there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining [whether] there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. The scope of review on an appeal from the grant of judgment on the pleadings is plenary. We must determine [whether] the action of the court below was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.

*Kelaco v. Davis & McKean Gen. P'ship,* 743 A.2d 525, 528 (Pa.Super.1999) (citation and quotation omitted). Thus, our review is limited to determining whether the trial court abused its discretion or committed an error of law. *Cf. Kurz v. Lockhart,* 656 A.2d 160, 162 n. 1 (Pa. Cmwlth.1995).

*Kelly v. Hazleton General Hospital,* 837 A.2d 490, 493 (Pa.Super.2003).

¶ 8 "[T]he interpretation of an insurance policy is a matter of law properly resolved in a declaratory judgment action." *Erie Ins. Exchange v. Muff,* 851 A.2d 919, 925 (Pa.Super.2004) (citation omitted). We note additionally that "[a]n insurer's duty to defend is a distinct obligation, different from and broader than its duty to indemnify." *Id.* (emphasis omitted).

'*The insurer's obligation to defend is fixed solely by the allegations in the underlying complaint.* It is not the actual details of the injury, but *the nature of the claim* which determines whether the insurer is required to defend. The duty to defend is limited to only those claims covered by the policy. *The insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an inju-*

ry which is actually or potentially within the scope of the policy.

Thus, the insurer owes a duty to defend if the complaint against the insured alleges facts which would bring the claim within the policy's coverage if they were true. *It does not matter if in reality the facts are completely groundless, false, or fraudulent. It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend.'*

*Id.* at 926, quoting *Aetna Cas. And Sur. Co. v. Roe,* 437 Pa.Super. 414, 650 A.2d 94, 98–99 (1994), quoting *D'Auria v. Zurich Ins. Co.,* 352 Pa.Super. 231, 507 A.2d 857, 859 (1986) (some internal citation and quotation marks omitted in *Muff*) (some emphasis in *Muff*) (some emphasis added).

▉ ¶ 9 Where, as here, " 'an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense.' " *Mistick, Inc. v. Northwestern National Cas. Co.,* 806 A.2d 39, 42 (Pa.Super.2002), quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 605, 735 A.2d 100, 106 (1999). As the *Mistick* court continued, "Thus, unless the insurer establishes that the allegations of the insured's complaint fall within the stated scope of the exclusion, the court must deny its demurrer and require the insurer to tender a defense under the policy." *Id.,* citing *Madison Constr. Co., supra* at 605, 735 A.2d at 106 (other citations omitted).

¶ 10 Both parties and the trial court cite *Travelers Indemnity Co. v. Fantozzi,* 825 F.Supp. 80 (E.D.Pa.1993).[1] In *Fantozzi,* the district court opined,

The policy [at issue therein] defines 'business' to include 'trade, business or occupation. I find that this provision is couched in non-technical laymen's terminology for which insureds ... needed no explanation as to its meaning or effect, and therefore, I find that the provision is unambiguous as a matter of law.

*Id.* at 85, citing *Myrtil v. Hartford Fire Ins. Co.,* 510 F.Supp. 1198, 1201 (E.D.Pa. 1981) (finding the same language "clearly not ambiguous."). The trial court also cites *United States v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), for the proposition that "a farm is a business like any other." *Id.* at 315, 107 S.Ct. 1134.

▉ ¶ 11 Parents claim, however, that they learned after they filed their complaint that insureds had discontinued their farming pursuits prior to the fatal accident, as insureds asserted in their answer and new matter. Parents also claim that insurer failed to sustain its burden of proving either a continuity of their farming business or a profit motive so as to sustain its burden of proving the business exclusion applied. *See Fantozzi,* 825 F.Supp. at 85. In determining the existence of a duty to defend, our review is, however, limited to the allegations in the complaint, even if "the facts are completely groundless, false, or fraudulent. It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend." *Muff,* 851 A.2d at 926 (quotation marks and citations omitted).

---

1. In *Fantozzi,* the mother of a child who had been sexually molested by her babysitters' son sued the babysitters, who sought defense and indemnification from Travelers, from whom they had purchased a homeowners' policy with a business pursuits exclusion. We, like the district court in *Fantozzi,* must determine whether there is coverage under insureds' policy "[r]egardless of the sympathy that this set of allegations evokes[.]" *Fantozzi,* 825 F.Supp. at 84.

Parents' complaint, in the paragraphs set forth *supra*, indicates that the insureds were still actively involved in the farming business on Roseville Road when their son died, and that the farming partnership, which included insureds, "did business" in several counties in the surrounding area. As the *Fantozzi* court observed, "a profit motive 'may be shown by such activity as a means of livelihood, a means of earning a living, procuring subsistence or profit, commercial transactions or engagements.'" *Fantozzi*, 825 F.Supp. at 85, quoting *Sun Alliance Ins. Co. v. Soto*, 836 F.2d 834, 836 (3rd Cir.(V.I.) 1987).

¶ 12 Because we are reviewing a judgment on the pleadings, and because insurer has asserted an affirmative defense in the form of its policy exclusion, we have reviewed insureds' answer and new matter. As this court recently opined in a similar context, Pennsylvania case law addressing the business pursuits exception in homeowners' insurance policies is relatively limited. *White v. Keystone Ins. Co.*, 775 A.2d 812, 814 (Pa.Super.2001), *appeal granted*, 567 Pa. 745, 788 A.2d 378 (2001). The *White* court therefore adopted the two-prong test the Third Circuit Court of Appeals announced in *Soto* and the District Court for the Eastern District of Pennsylvania applied in *Fantozzi*. Applying that test, the *White* court found that the business pursuits exception did not apply under the facts before it because the insured in *White* had not yet completed his purchase of the business establishment, a bar, at the time of the accidental shooting giving rise to the claim, even though the insured provided the bar's employees with the gun to protect the bar's assets. *White*, 775 A.2d at 814–815. Thus, insurer could

establish neither continuity of the business nor a profit motive. *Id.* at 815. In reaching its conclusion, the *White* court distinguished *Bullock v. Pariser*, 311 Pa.Super. 487, 457 A.2d 1287 (1983) (finding the business exclusion applicable where the plaintiff was bitten by a security dog on insureds' business premises).

¶ 13 Thus, while the *White* court acknowledged that timing is an issue to be considered, we find cases from other jurisdictions more directly applicable to the timing issue in the case before us.[2] In particular, we have reviewed *Wickner v. American Rel. Ins. Co.*, 141 N.J. 392, 661 A.2d 1256 (1995), and *Industrial Indemnity Co. v. Goettl*, 138 Ariz. 315, 674 P.2d 869 (1983), and find their rationale both compatible with Pennsylvania law and compelling under the facts before us.

¶ 14 In *Wickner*, for example, the supreme court of New Jersey upheld a business exclusion in the Wickners' homeowners' policy where the injured party tripped and fell on a sidewalk abutting a three-family residence the Wickners had sold less than one month earlier. *Wickner*, *supra* at 394–395, 661 A.2d at 1257. The injured party, Marina Avila, alleged in her complaint that the Wickners had negligently created, maintained, and failed to repair the dangerous condition while they owned the property. Avila also brought claims against the new owners and the builders.

¶ 15 In upholding the exclusion, the *Wickner* court, relying on prior New Jersey precedent, opined, "'a predecessor in title who has created or maintained the dangerous sidewalk condition should remain liable to the injured pedestrian irrespective of the fact that the property had

---

**2.** "We recognize that we are not bound by these cases; however, we may use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law."

*Trach v. Fellin*, 817 A.2d 1102, 1115 (Pa.Super.2003) (*en banc*), *appeal denied*, 577 Pa. 725, 847 A.2d 1288 (2004).

been conveyed.'" *Id.* at 397, 661 A.2d at 1258, quoting *Cogliati v. Ecco High Frequency Corp.*, 92 N.J. 402, 456 A.2d 524 (1983).[3] Continuing, the *Wickner* court observed, "If the policy exclusions were found not to apply in this context, than [sic] we would be providing insureds with more insurance protection for having sold their property than would be attributable to them during the time they owned that property." *Id.* at 399, 661 A.2d at 1259. As the *Wickner* court averred, "That interpretation can be neither derived from the language of the policy, reasonably inferred from the intentions of the parties, nor imputed as their reasonable expectations." *Id.*

¶ 16 In reaching its holding that "the insured's conduct creating the dangerous condition, rather than the insured's status at the time of the occurrence, is of primary significance[,]" the *Wickner* court cited *Goettl, supra. Wickner, supra* at 400, 661 A.2d at 1260. In *Goettl*, Billy Hartman fell through the roof of a warehouse belonging to his employer, McGraw–Edison, and sustained permanent quadriplegic injuries. The prior owners of the warehouse, Gust and Adam Goettl, had the warehouse constructed during the ten-year period in which they held an ownership interest in the property. In 1960, the Goettls sold their interest to McGraw–Edison, and in 1976, sixteen years later, Hartman fell through the warehouse roof. *Goettl*, 674 P.2d at 871.

¶ 17 The Goettls were named in the lawsuit Hartman filed, and sought defense/indemnification under several policies they had purchased when they owned the property and which were still in effect at the time of the accident. The insurers sought declaratory relief, and the trial court granted summary judgment in insur-

ers' favor with regard to a homeowners' policy and a personal catastrophe policy based upon business pursuits exclusions similar to the exclusion at issue herein. *Id.* at 871–872. On appeal, the Court of Appeals of Arizona upheld the summary judgments, stating, "our finding that the exclusions in the [two policies] are applicable to the circumstances of this case enforces the respective contracts as made by the parties." *Id.* at 874. Quoting an Arizona supreme court case, the *Goettl* court observed:

'[A homeowners'] policy is low premium protection designed to insure a homeowner against the hazards arising out of the operation and maintenance of his home. In this type of policy, certain risks are specifically excluded because they are not embraced within the course of a homeowner's normal activities. Business activities present additional risks over and beyond the ordinary and usual hazard to be found in the operation and maintenance of a home.'

*Id.*, quoting *Kepner v. Western Fire Ins. Co.*, 109 Ariz. 329, 330, 509 P.2d 222, 223 (1973) (citation omitted).

¶ 18 We find the reasoning of both *Wickner* and *Goettl* persuasive under the facts of this case. Insureds' homeowners' policy covered the period January 1, 2000, when they still owned the farm, to January 1, 2001, after they conveyed the farm to their son and daughter-in-law. At the time they purchased the policy, they operated a farming business. The conditions giving rise to the tragic death of Joshua Spencer occurred during the period parents allege insureds designed, built, and maintained the manure pit; purchased the tractor; allowed the concrete ramp leading to the pit to become worn and slippery; failed to replace the worn tires on the tractor; and allowed unsupervised minors

**3.** In addition to the business pursuits exclusion, the policies and the facts at issue in

*Cogliati* and *Wickner* also involved an unlisted property exception, not an issue in this case.

to operate the tractor in and around the unprotected pit, which was designed to hold approximately three months of manure for 250 cows, and which measured 100 feet long by 30 feet wide by 12 feet deep. All of the misfeasances and nonfeasances parents allege clearly have as their base the business of farming, not the ownership of a home. As the *Wickner* court observed, "If the policy exclusions were found not to apply in this context, than [sic] we would be providing insureds with more insurance protection for having sold their property than would be attributable to them during the time they owned that property." *Id.* at ·399, 661 A.2d at 1259. The insureds purchased a policy with a business exclusion; the trial court properly found the exclusion precluded coverage for personal liability arising out of a business. We find no error.

¶ 19 Likewise, we find no error in the trial court's denying parents' motion to amend their answer to the declaratory judgment complaint. It is parents' underlying complaint that controls our review, not their answer to the complaint for declaratory judgment. Additionally and more importantly, there are no disputed issues of fact regarding insureds' ownership of the farming business at the time they purchased the homeowners' policy containing the business exclusion on January 1, 2000. Regardless of their ownership interest or lack thereof after the sale, we find the business exclusion applies to preclude coverage under insurer's policy for any claims arising from the farming business while this policy was in effect.

¶ 20 Order granting judgment on the pleadings and order denying motion for reconsideration and motion to amend answer are affirmed.