J-A12013-19

2019 PA Super 213

| NATIONWIDE MUTUAL INSURANCE COMPANY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| AUGUST W. ARNOLD, JON PUSHINSKY, ESQUIRE, AND CONSTRUCTION METHODS AND COORDINATION, INC. D/B/A CMC ENGINEERING, INC., | |
| Appellees | No. 1207 WDA 2018 |

Appeal from the Order Entered August 6, 2018
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-17-2937

| NATIONWIDE MUTUAL INSURANCE COMPANY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| AUGUST W. ARNOLD, JON PUSHINSKY, ESQUIRE, AND CONSTRUCTION METHODS AND COORDINATION, INC. D/B/A CMC ENGINEERING, INC., | |
| Appellants | No. 1208 WDA 2018 |

Appeal from the Order Entered October 11, 2018
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-17-2937

BEFORE: BENDER, P.J.E., DUBOW, J., and FORD ELLIOTT, P.J.E.

OPINION BY BENDER, P.J.E.:                          FILED JULY 11, 2019

Appellant, Nationwide Mutual Insurance Company ("Nationwide"), appeals from the trial court's orders denying its motion for summary judgment in this declaratory judgment action. After careful review, we affirm in part and reverse in part the October 11, 2018 order underlying the appeal at docket number 1208 WDA 2018, and quash the appeal at docket number 1207 WDA 2018.

The trial court summarized the underlying facts of this case as follows:

Nationwide insured [Appellee, August W. Arnold,] under its Personal Umbrella Policy No. 54 73 PU 434125 [(hereinafter "Umbrella Policy"),] with an effective date of May 11, 2009. Nationwide seeks a determination of its[] obligation to defend/indemnify Arnold in a separate lawsuit brought by CMC Engineering, Inc. (hereinafter "CMC") against Arnold, docketed at CMC Engineering[,] Inc. v. … Arnold and Jon Pushinsky, Esquire, at GD-17-002106 (hereinafter "CMC Action" … )[.]

The CMC Action [arose] following the unsuccessful prosecution of a [q]ui [t]am [a]ction on behalf of the United States by Arnold against CMC and others.[1] Arnold acted as the [relator] for the

_____

[1] Arnold brought the qui tam action pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. By way of background, the United States Supreme Court recently explained:

[The FCA] imposes civil liability on "any person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the Government or to certain third parties acting on the Government's behalf. 31 U.S.C. §§ 3729(a), (b)(2). Section 3730 authorizes two types of actions: First, the Attorney General, who "diligently shall investigate a violation under section 3729," may bring a civil action against the alleged false claimant. § 3730(a). Second, a private person, known as a relator, may bring a qui tam civil action "for the person and for the United States Government" against the alleged false claimant, "in the name of the Government." § 3730(b).

[q]ui [t]am [a]ction that concerned the use of federal highway funds passing through PennDOT, Arnold's employer, to companies such as CMC.[2]  In the CMC [A]ction, CMC filed suit against Arnold and … [Jon] Pushinsky, Esquire…[,] for violation of the Dragonetti Act,[3] Abuse of Process, and Intentional Interference of Contractual Relations.  [] Pushinsky represented Arnold in the

_____

If a relator initiates the action, he must deliver a copy of the complaint and supporting evidence to the Government, which then has 60 days to intervene in the action.  §§ 3730(b)(2), (4).  During this time, the complaint remains sealed.  § 3730(b)(2).  If the Government intervenes, it assumes primary responsibility for prosecuting the action, though the relator may continue to participate.  § 3730(c).  Otherwise, the relator has the right to pursue the action.  §§ 3730(b)(4), (c)(3).  Even if it does not intervene, the Government is entitled to be served with all pleadings upon request and may intervene at any time with good cause.  § 3730(c)(3).  The relator receives a share of any proceeds from the action—generally 15 to 25 percent if the Government intervenes, and 25 to 30 percent if it does not—plus attorney's fees and costs.

Cochise Consultancy, Inc. v. United States ex rel. Hunt, 139 S.Ct. 1507, 1510 (2019).

[2] According to CMC, "[d]uring the times relevant to the [q]ui [t]am [a]ction, CMC held contracts with [PennDOT] to provide certain services which included inspection services with regard to highway construction projects."  See CMC's Complaint at ¶ 13 (attached as Exhibit B to Nationwide's Complaint, 6/8/16).  In its complaint, CMC alleged that "[t]he contracts which [it] held with [PennDOT] included contracts under which … CMC provided services to [PennDOT] on highway construction projects funded, in whole or in part, by the Federal Highway Administration."  Id. at ¶ 14.

[3] "[A]llegations of malicious prosecution invoke Pennsylvania's statutory law in the form of the wrongful use of civil proceedings statute or 'Dragonetti Act.' This Court has described wrongful use of civil proceedings as a tort arising when a person institutes civil proceedings with a malicious motive and lacking probable cause."  See Freundlich & Littman, LLC v. Feierstein, 157 A.3d 526, 532 (Pa. Super. 2017) (citations, brackets, and some quotation marks omitted).

[q]ui [t]am action against CMC ... in the United States District Court for the Western District of Pennsylvania.

Nationwide is now defending Arnold in the CMC Action subject to a Reservation of Rights letter. It seeks relief from its[] obligation to defend and indemnify Arnold in that CMC Action pursuant to the "business pursuits" exclusion contained in the policy issued to Arnold.

Pa.R.A.P. 1925(a) Opinion ("Rule 1925(a) Op."), 12/12/2018, at 1-2.

To obtain such relief, Nationwide filed a declaratory judgment complaint on June 8, 2016, seeking a declaration that it has no duty to defend and/or indemnify Arnold in the CMC Action. Subsequently, on July 14, 2017, Nationwide filed a motion for summary judgment, asserting that the 'business pursuits' exclusion in Arnold's Umbrella Policy excludes coverage for the lawsuit brought against Arnold by CMC. Arnold and Pushinsky each filed responses, in which they both requested that Nationwide's motion be denied.

On July 23, 2018, the trial court entered a confusing, contradictory order, in which it granted Nationwide's motion for summary judgment but declared that Nationwide has a duty to defend and/or indemnify Arnold based on the Umbrella Policy.[4] In other words, despite stating that it granted

_____

[4] Specifically, the order stated the following, in pertinent part:

[U]pon consideration of the motion of [Nationwide] for summary judgement [sic] and the responses of the parties thereto, having found that there remain no genuine issues of material fact with respect to the coverage of ... Nationwide's Umbrella Policy issued to ... Arnold, it is hereby ORDERED that [Nationwide's] motion is GRANTED.

Nationwide's motion, it actually denied Nationwide the relief it requested.   In an accompanying memorandum, the trial court explained that the 'business pursuits' exclusion did not apply and, as a result, Nationwide continued to have a duty to defend Arnold in the CMC Action.   See Trial Court Memorandum ("TCM"), 7/23/2018, at 8.   Further, it stated that, because Nationwide has a duty to defend, Nationwide also has a duty to indemnify.   Id.   Thereafter, on August 6, 2018, for reasons that are unclear to us, the trial court entered an order identical to its July 23, 2018 order.   See Trial Court Order, 8/6/2018.

On August 17, 2018, Nationwide filed separate, timely notices of appeal from both of these orders.[5]   The trial court directed Nationwide to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on October 2, 2018.   On October 11, 2018, apparently realizing the contradiction in its earlier orders disposing of Nationwide's motion for summary judgment, the trial court entered an amended order.   Therein, the trial court stated that it was amending and correcting its July 23, 2018 order to reflect that Nationwide's summary judgment motion was denied, but

_____

> This court finds that Nationwide ... has a duty to defend and/or indemnify ... Arnold based on ... Nationwide's Umbrella Policy ... for the claims made in the underlying [CMC Action].

Trial Court Order, 7/23/2018.

[5] On September 20, 2018, this Court consolidated these appeals sua sponte. However, because the August 6, 2018 order is duplicative of the July 23, 2018 order, we quash the appeal taken from the August 6, 2018 order and docketed at 1207 WDA 2018.

reiterating its determination that Nationwide has a duty to defend and/or indemnify Arnold in the CMC Action under the Umbrella Policy. See Trial Court Amended Order, 10/11/2018.[6] On October 19, 2018, Nationwide filed its Rule 1925(b) statement. The trial court then issued its Rule 1925(a) opinion.

Presently, Nationwide raises three issues for our review:

1. Did the trial court err[] by failing to grant [Nationwide's] motion for summary judgment and by failing to enter an order declaring that Nationwide had no duty to further defend and/or indemnify [Arnold] pursuant to [the Umbrella Policy]?

2. Did the trial court err by incorrectly applying the two-prong standard for application of the 'business pursuits' exclusion as enunciated in White v. Keystone [Ins. Co., 775 A.2d 812 (Pa. Super. 2001),] by examining those prongs as to … Arnold's status as a [q]ui [t]am litigant, rather than analyzing the prongs of the

_____

[6] We note that "a court has inherent power to amend its records, to correct mistakes of the clerk or other officer of the court, inadvertencies of counsel, or supply defects or omissions in the record at any time." Mfrs. and Traders Trust Co. v. Greenville Gastroenterology, SC, 108 A.3d 913, 921 (Pa. Super. 2015) (internal quotation marks and citations omitted). "[A] major substantive change, such as the total withdrawal of an order relative to a motion of record[,] does not constitute a corrective order within the inherent powers of the trial court or the court's statutory authority. Absent a specific rule or statute, the only exception is to correct obvious technical mistakes (e.g., wrong dates) but no substantive changes can be made." Id. (internal quotations marks and citations omitted). Here, the trial court's stating that it granted Nationwide's summary judgment motion was an obvious error where it explicitly provided in the same order that Nationwide has a duty to defend and/or indemnify Arnold. Further, the trial court's amended order did not change the substance of its ruling, i.e., that Nationwide has a duty to defend and/or indemnify Arnold in the CMC Action. Thus, we conclude that the trial court had the power to make this correction. Accordingly, given the unique circumstances of this particular case and in the interest of judicial economy and a clear record, we will consider the appeal docketed at 1208 WDA 2018 to be from the corrected October 11, 2018 order. See Pa.R.A.P. 105(a) ("These rules shall be liberally construed to secure the just, speedy and inexpensive determination of every matter to which they are applicable.").

test [as] to ... Arnold's employment at PennDOT, a defined 'business' pursuant to the terms of the Nationwide policy?

3. Did the trial court err by ordering that [Nationwide] had the duty to indemnify [Arnold] in the underlying lawsuit when ordering indemnification is legally premature?

Nationwide's Brief at 7-8 (unnecessary capitalization omitted).

At the outset — given that Nationwide appeals from an order denying its motion for summary judgment and appears to be interlocutory — we address, briefly, the basis for our jurisdiction. See Good v. Frankie & Eddie's Hanover Inn, LLP, 171 A.3d 792, 794 n.1 (Pa. Super. 2017) ("[A]n order denying summary judgment is ordinarily a non-appealable interlocutory order.") (citation omitted). Our Supreme Court has explained:

> Generally speaking, appellate courts have jurisdiction to entertain appeals from final orders entered at the trial court level. Ordinarily, a final order disposes of all claims and of all parties. Pa.R.A.P. 341(b)(1). However, Pa.R.A.P. 311(a)(8) states that an "appeal may be taken as of right and without reference to Pa.R.A.P. 341(c)[7] from ... [a]n order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties." Importantly, Section 7532 of the [Declaratory Judgment Act] provides that courts of record have the power to declare the rights, status, and other legal relations and that "such declarations shall have the force and effect of a final judgment or decree." 42 Pa.C.S. § 7532.

Pa. Manufacturers' Assoc. Ins. Co. v. Johnson Matthey, Inc., 188 A.3d 396, 399 (Pa. 2018) (some internal citations omitted). Within the context of declaratory judgment actions, the Court has "provided a rather

---

[7] See Pa.R.A.P. 341(c) (providing that a trial court "may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case," and that "[s]uch an order becomes appealable when entered").

- 7 -

straightforward two-part test for appellate courts to apply when considering whether an order declaring the rights of parties is final and appealable: (1) what is the effect of the lower court's decision on the scope of the litigation; and (2) what practical effect does the court's decision have on the ultimate outcome of the case." Id. (citation omitted). That is to say, "[i]f the order in question merely narrows the scope of the litigation and does not resolve the entirety of the parties' eligibility for declaratory relief, then the order is interlocutory and not immediately appealable." Id. at 400 (citation omitted).

Here, Nationwide appealed from an order denying, in effect, its claim for declaratory relief. The trial court's order resolves the entirety of the parties' eligibility for declaratory relief, as the trial court determined therein that Nationwide has a duty to defend and/or indemnify Arnold in the CMC Action. Thus, the order is appealable at this time. We therefore proceed to the merits.

Before examining Nationwide's issues, we acknowledge our standard of review for an order disposing of a motion for summary judgment:

> Our scope of review … is plenary. [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [its] cause of action. Summary judgment is proper "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has

failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2. Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate [c]ourt may disturb the trial court's order only upon an error of law or an abuse of discretion.

Nat'l Cas. Co. v. Kinney, 90 A.3d 747, 752-53 (Pa. Super. 2014) (some internal citations, quotation marks, and original brackets omitted).

We address Nationwide's first and second issues together. Nationwide argues that the trial court erred in failing to find that the 'business pursuits' exclusion in the Umbrella Policy applied to preclude coverage for Arnold with respect to the CMC Action. It advances that "this [e]xclusion is triggered because the litigation and [Arnold's] status as [a] [r]elator 'arises out of' his employment with PennDOT, which was his business pursuit." Nationwide's Brief at 48-49. As a result, Nationwide says the trial court should have granted summary judgment in its favor.

This Court has previously stated that "the interpretation of an insurance policy is a matter of law properly resolved in a declaratory judgment action." Erie Ins. Exchange v. Muff, 851 A.2d 919, 925 (Pa. Super. 2004). Further,

[a]n insurer's duty to defend is a distinct obligation, different from and broader than its duty to indemnify. An insured has purchased not only the insurer's duty to indemnify successful claims which fall within the policy's coverage, but also protection against those groundless, false, or fraudulent claims regardless of the insurer's ultimate liability to pay. Not all claims asserted against an insured, however, activate the insurer's duty to defend.

The insurer's obligation to defend is fixed solely by the allegations in the underlying complaint. It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend. The duty to defend is limited to only those claims covered by the policy. The insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope of the policy.

Thus, the insurer owes a duty to defend if the complaint against the insured alleges facts which would bring the claim within the policy's coverage if they were true. It does not matter if in reality the facts are completely groundless, false, or fraudulent. It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend.

Id. at 925-26 (emphasis and citations omitted). We also observe:

An insurer who refuses to defend its insured from the outset does so at its peril, because the duty to defend remains with the insurer until it is clear the claim has been narrowed to one beyond the terms of the policy. An insurer who disclaims its duty to defend based on a policy exclusion bears the burden of proving the applicability of the exclusion.

Id. at 926 (citations omitted).

Because Nationwide's duty to defend is dependent on the allegations set forth in the underlying complaint, we look to the averments made by CMC in the CMC Action. In its complaint, CMC asserted that Arnold and Pushinsky made allegations against CMC in the qui tam action that were false, and that Arnold and Pushinsky either: (a) knew that these allegations were false, (b) did not conduct a proper investigation that would allow them to determine whether the allegations were true before they made them, or (c) possessed information which was sufficient to allow them to know that such allegations were not true and were not supported. See CMC's Complaint at ¶ 18.

According to CMC, Arnold claimed in the qui tam action that, inter alia, CMC overcharged PennDOT "for services performed by individuals, on behalf of and for [CMC], who did not possess the necessary credentials or certificates for the rates of pay charged by [CMC]." Id. at ¶ 19(d). CMC claimed that Arnold and Pushinsky "made their assertions of overbilling by CMC based upon ... Arnold's personal interpretation of contract requirements[,]" but stated that "Arnold's position with [PennDOT] did not involve [his] making the interpretation of the requirements that applied to the positions or billing classifications or billing rates for which CMC had submitted [certain individuals] to [PennDOT] for approval." Id. at ¶¶ 25, 27. Moreover, CMC said that the PennDOT officials who were actually responsible for these tasks had given CMC approval. Id. at ¶¶ 31-32. CMC advanced that Arnold filed and pursued the qui tam action based on a "personal desire" to prove "he was the only person who had made a proper interpretation of the contract requirements and to prove that [PennDOT] officials ... were incorrect" in their interpretation, as well as "to secure personal financial gain by receiving a share o[f] any payment CMC might have been forced to pay to end its involvement in the [q]ui [t]am [a]ction...." Id. at ¶¶ 75, 76. Despite their assertions, CMC alleged that Arnold and Pushinsky "lacked information that CMC made any claim for payment that was false or fraudulent both at the time [they] made their filings in the [q]ui [t]am [a]ction and when they continued to pursue the [q]ui [t]am [a]ction against CMC for 11 years." Id. at ¶ 40.

With those allegations in mind, we now examine Arnold's Umbrella Policy. The Umbrella Policy contains the following 'business pursuits' exclusion:

Exclusions

Excess liability and additional coverages do not apply to:

* * *

5. An occurrence arising out of the business pursuits or business property of an insured. To the extent a listed underlying policy provides coverage, this policy will apply as excess insurance....

See Nationwide's Motion for Summary Judgment, 7/14/2017, at "Exhibit 1A" (the Umbrella Policy) (emphasis in original). In addition, the Umbrella Policy provides the following definitions:

Definitions

5. Occurrence(s) means an accident including continuous or repeated exposure to the same general conditions. It must result in bodily injury, property damage, or personal injury caused by an insured. The occurrence resulting in bodily injury or property damage must be during the policy period. The occurrence resulting in the personal injury must be due to an offense committed during the policy period.

* * *

8. Personal injury means:

    a) false arrest, false imprisonment, wrongful conviction, wrongful entry;

    b) wrongful detention or malicious prosecution;

    c) libel, slander, defamation of character, or invasion of rights of privacy.

9. Business means a trade, profession, occupation, or employment including self-employment, performed on a full-time, part-time, or temporary basis.

Id. (emphasis in original).

Relying on federal case law from the U.S. Court of Appeals for the Third Circuit as well as the U.S. District Courts of Pennsylvania, this Court has articulated that "activity encompassed within a 'business pursuits' exclusion in an insurance policy requires two elements: 1) continuity, and 2) a profit motive." White, 775 A.2d at 814 (citations omitted). We have discerned that "[a] profit motive … may be shown by such activity as a means of livelihood, a means of earning a living, procuring subsistence or profit, commercial transactions or engagements." Id. at 815 (citation and quotation marks omitted). Additionally, continuity has been described by the Third Circuit as "customary engagement in the activity." Sun Alliance Ins. Co. v. Soto, 836 F.2d 834, 836 (3d Cir. 1988).

To illustrate, in White, this Court considered whether a 'business pursuits' exclusion applied to preclude coverage for an insured that loaned his handgun to employees of a bar he planned to purchase and, prior to the completion of the sale, an employee mishandled the gun and fatally shot a woman. White, 775 A.2d at 812-13. The insured had loaned the handgun to the employees "[f]or the protection of the bar's assets and the safety of its employees…." Id. at 813. The administratrix of the woman's estate instituted a declaratory judgment action against the insured's insurance company to determine if the company was responsible for coverage under the insured's homeowner's policy, which contained a 'business pursuits' exclusion. See id. at 812-13. The insurance company argued that the insured's effort to

- 13 -

purchase the bar was a business activity, and that he had a profit motive in giving his handgun to the employees. See id. at 814, 815. On appeal, this Court concluded that the policy's 'business pursuits' exclusion did not apply, opining that the "the action of [the insured] in giving a handgun to the employees of the bar, and the subsequent action of [an employee] in mishandling the gun, was not incident to a business pursuit." Id. at 815. We noted that the sale of the bar to the insured was not yet complete, and that the insured did not have a profit motive at the time of the shooting because he "was not engaged in the operation of the business and, thus, he did not secure any profit or earnings by protecting the assets or employees of the bar." Id.

In contrast, in Old Guard Ins. Co. v. Sherman, 866 A.2d 412 (Pa. Super. 2004), we determined that a 'business pursuits' exclusion applied to preclude coverage for insureds that had a wrongful death and survival action filed against them after a teenaged worker died on their farm when a tractor he was operating slid into a manure pit. Id. at 413-14. The insureds had sold the farm shortly before the accident but they had remained partners in the farm's business even after the sale. Id. at 414. We observed:

> The conditions giving rise to the tragic death of [the teenaged worker] occurred during the period [that the] insureds [allegedly] designed, built, and maintained the manure pit; purchased the tractor; allowed the concrete ramp leading to the pit to become worn and slippery; failed to replace the worn tires on the tractor; and allowed unsupervised minors to operate the tractor in and around the unprotected pit, which was designed to hold approximately three months of manure for 250 cows, and which measured 100 feet long by 30 feet wide by 12 feet deep. All of

the misfeasances and nonfeasances … allege[d] clearly have as their base the business of farming, not the ownership of a home. … The insureds purchased a policy with a business exclusion; the trial court properly found the exclusion precluded coverage for personal liability arising out of a business. We find no error.

Id. at 419-20.

Similarly, in Soto, the Third Circuit discerned that a 'business pursuits' exclusion precluded coverage for the owner of commercial properties who was sued by his tenants after the properties caught on fire due to purportedly negligent construction and maintenance. Soto, 836 F.2d at 834-35.[8] The Third Circuit determined that both prongs of the 'business pursuits' exclusion had been met as the owner had operated the commercial properties since their construction 20 years earlier, and received a salary and dividends from that venture. Id. at 836. The Court also noted that "the allegations of the complaint charge [the owner] with specific actions arising from his business pursuits and indeed [he] testified in his deposition that he maintained the buildings in that he hired people to do the maintenance and directed their work." Id.

Finally, both Nationwide and Arnold cite to the non-binding case of Aetna Cas. and Sur. Co. v. Ericksen, 903. F.Supp. 836 (M.D. Pa. 1995). In Ericksen, an insurance company filed a declaratory judgment action seeking a ruling that it was not liable to defend and indemnify its insured — a professor

_____

[8] The White court referenced Soto in its decision. White, 775 A.2d at 814. However, we acknowledge that "[f]ederal district and appeals court decisions are not binding precedent on this Court. We may follow their reasoning where it is persuasive." Reeser v. NGK North American, Inc., 14 A.3d 896, 899 n.3 (Pa. Super. 2011) (citation omitted).

at a university — after her colleague brought a libel action against her based on (1) a sexual harassment complaint she had made to her employer about the colleague, and (2) a discussion she had with a newspaper regarding the sexual harassment complaint she made. See id. at 837-39. The insurance company claimed that the 'business pursuits' exclusion in the insured's policy precluded coverage. The court recognized that the insured's "activities as a professor were a business pursuit[,]" and ascertained that the pertinent question is "whether the statements made by [the insured] which caused the alleged injury 'arose out of' that employment." Id. at 839. In answering this question, the court determined that "that an insurer is not liable to defend and indemnify an action wherein an injury is alleged in a complaint (1) to have been caused by the insured while the insured was engaged in his or her business, as that word is defined in the policy, and (2) to have a causal connection to the business of the insured." Id. at 840.[9] The court then found that the complaint the insured made to her employer, which instituted confidential proceedings against the colleague in accordance with the university's sexual harassment policy and procedure, was made "in the course of [the insured's] employment, and any injuries resulting therefrom 'arose out of' her employment." Id.

_____

[9] Neither party in Ericksen had cited a case "which purports to define 'arising out of' for purposes of a business pursuits exclusion in a homeowner's insurance policy." Ericksen, 903 F.Supp. at 839. Given this lack of authority, the court opined that "the most analogous law appears to be that of workers' compensation, which provides for the compensation of employees for injuries 'arising out of and in the course of employment.'" Id. (citation omitted).

However, the Ericksen court reached a different result with respect to the insured's statements to the newspaper about her complaint. It concluded that the 'business pursuits' exclusion did not apply to those statements because the insured "is nowhere said to have public relations responsibilities for the [u]niversity, save recruitment of potential students to the department. Nor did the publication of the allegedly libelous statement arise in the context of a class taught by [the insured]." Id. at 841. The court acknowledged that the insurance company pointed to "factors such as the interview taking place in [the insured's] office at the [u]niversity, and the fact that the subject matter of the interview involved what may have occurred at the [u]niversity[,]" but nonetheless concluded that "there is no causal connection between the performance of [the insured's] professional duties and the alleged injury suffered by [the colleague]." Id. As a result, the court declared that the insurance company had a duty to defend the insured. Id.

In the case sub judice, the trial court conveyed in its Rule 1925(a) opinion that the 'business pursuits' exclusion of Arnold's Umbrella Policy did not apply to preclude coverage. In reaching this conclusion, it considered whether Arnold's litigation of the qui tam action was a business pursuit under the two-prong 'business pursuits' exclusion test. It reasoned:

> To satisfy the first prong, continuity, Arnold must have had consistent engagement in the activity at issue. Here, the activity complained of is the initiation of the [q]ui [t]am lawsuit, not his employment at PennDOT. There is nothing in the record to support that Arnold was a consistent [relator] in [q]ui [t]am actions. There is no evidence in the record to show that Arnold was continuously engaged in activity as a litigant. There is also

no evidence to show that Arnold was continuous[ly] looking for evidence to force CMC into litigation. Lastly, [n]either Arnold nor ... Pushinsky are continuously engaged in litigation against CMC or in [q]ui [t]am actions. The facts do not support the continuity element of the two-pronged test. Without the continuity element, the facts do not satisfy the test for [the] business pursuit[s] exclusion.

The second prong is profit motive. To have a profit motive, Arnold must have engaged in an activity as "a means of livelihood, a means of earning a living, procuring subsistence or profit, commercial transactions, or engagements." The ... Umbrella Policy describes "business" as[] "trade profession, occupation, or employment including self-employment, performed on a full-time, part-time or temporary basis." Neither the underlying CMC complaint nor the [q]ui [t]am action "arose out" of Arnold's employment with PennDOT. Arnold's employment with PennDOT is a "means of livelihood" or "earning a living." Here, serving as a relator in the [q]ui [t]am action is neither Arnold's means of livelihood nor the way he earns a living. Arnold fails to meet the "profit motive" prong of the test.

Rule 1925(a) Op. at 6-7 (internal citations omitted).[10]

Nationwide argues that the trial court incorrectly applied the two-prong 'business pursuits' exclusion test to Arnold's status as a litigant in the qui tam action. See Nationwide's Brief at 46. Nationwide contends that the litigation activity "only has to arise from the business pursuit, not actually be a business pursuit." Id. at 48. It states that "[t]he [q]ui [t]am action is not [Arnold's]

_____

[10] We recognize that this analysis directly contradicts the reasoning provided by the trial court in its earlier July 23, 2018 memorandum. There, the trial court found that the qui tam action did arise out of Arnold's employment with PennDOT and determined that the profit motive prong of the 'business pursuits' exclusion test was satisfied. TCM at 5, 6. Problematically, the trial court did not explain why its analysis changed between this memorandum and its subsequent Rule 1925(a) opinion. In any event, though, the trial court concluded in its July 23, 2018 memorandum that the 'business pursuits' exclusion did not apply to preclude coverage for Arnold, as the continuity prong was nevertheless not met by Nationwide. Id. at 7.

'business pursuit[,'] but rather it is an activity undertaken which <u>arose out of</u> the course of [Arnold's] employment with PennDOT." Id. at 47 (emphasis in original). To support that the qui tam litigation arose from Arnold's employment with PennDOT, Nationwide points to case law where courts — including the Supreme Court of Pennsylvania — have said that the language "'arising out of' in an insurance provision means causally connected with, not proximately caused by[,]" and that "'but for' causation satisfies the 'arising out of' language in an insurance policy." Id. at 56 (citing Allstate Prop. and Cas. Ins. Co. v. Squires, 667 F.3d 388, 391-92 (3d Cir. 2012) (quoting Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co., 170 A.2d 571, 573 (Pa. 1961)). According to Nationwide, "Arnold used his access through his employment to gather the evidence of alleged fraud involving federally funded projects implemented through PennDOT, and used that information he accumulated over time as the support for his [c]omplaint against CMC serving as the [r]elator in the [q]ui [t]am [a]ction." Id. at 48. It asserts that "'but for' [Arnold's] occupation and employment at PennDOT, he would not have had access to the necessary information contained within PennDOT's private business records, [and] would not have had the opportunity to pursue a [q]ui [t]am [c]omplaint and report the allegedly unsupported allegations of fraud against ... CMC." Id. at 59-60. Thus, Nationwide advances that the 'business pursuits' exclusion of the Umbrella Policy "is triggered because the litigation and [Arnold's] status as [a] [r]elator 'arises out of' his employment with PennDOT, which was his business pursuit." Id. at 48-49.

- 19 -

In response, Arnold admits that his "employment with PennDOT is clearly [his] 'business pursuit' under the [Umbrella] [P]olicy[.]" Arnold's Brief at 26.[11] However, he points out that he "is not being sued for something that he did pursuant to his employment at PennDOT. He is not being sued because he engineered a defective bridge at work, or because he complained about CMC to his employers." Id. According to Arnold, "what happened was that [he] acted outside of his employment, he complained about CMC's billing … by filing and litigating the [q]ui [t]am [a]ction, neither of which were part of his employment responsibilities at PennDOT." Id. at 25 (internal quotation marks omitted). Further, to counter Nationwide's 'but for' argument, Arnold maintains that "[e]very incidental factor that arguably contributes to an accident is not a 'but for' cause in the legal sense." Id. at 22 (citing Squires, 667 F.3d at 394). He claims that his "employment with PennDOT was incidental to the alleged injury caused by [his] filing and litigating of the [q]ui [t]am [a]ction against CMC. The alleged injury to CMC was caused by an external instrumentality, i.e.[,] the [q]ui [t]am [a]ction, that was totally

---

[11] While Arnold concedes outright that his employment at PennDOT is his business pursuit under the Umbrella Policy, Pushinsky does not make a similar admission in his brief. Nevertheless, Pushinsky still pushes back against Nationwide's 'arising out of' theory, contending that, "[b]ased on [Arnold's] exercise of his rights as a citizen (not as a businessman, not for his trade, not for his profession), … Arnold is potentially exposed to liability under [the] Dragonetti [Act and for] abuse of process and tortious interference. This potential liability does not 'arise from' a business pursuit." Pushinsky's Brief at 21; see also id. at 14 ("In filing a lawsuit on behalf of the United States, … Arnold was not engaged in a trade, profession, occupation or employment. … CMC does not seek to impose liability on … Arnold arising from his employment at PennDOT.").

separate from Arnold's employment with PennDOT." Id. at 23. Consequently, he asserts that the 'business pursuits' exclusion does not apply.

We agree with Nationwide and Arnold that the trial court incorrectly used the two-prong 'business pursuits' exclusion test to consider whether the qui tam action was itself a business pursuit. Instead, the trial court should have employed the two-prong test to determine whether the litigation of the purportedly baseless qui tam action (the occurrence resulting in personal injury to CMC) arose out of a business pursuit (Arnold's employment at PennDOT). See Nationwide's Motion for Summary Judgment, 7/14/2017, at "Exhibit 1A" (the Umbrella Policy) (excluding coverage for "[a]n occurrence arising out of the business pursuits ... of an insured...") (emphasis in original). It is clear that Arnold's employment at PennDOT constitutes a business pursuit, as it is an activity done with the requisite continuity and profit motive. See White, supra. Therefore, the issue boils down to whether Arnold's tenacious litigation of an allegedly unsupported qui tam action arose from his job at PennDOT.

At the outset, we acknowledge that this is a close question, and reiterate that Nationwide carries the burden of proving the applicability of the 'business pursuits' exclusion. See Muff, 851 A.2d at 926 ("An insurer who disclaims its duty to defend based on a policy exclusion bears the burden of proving the applicability of the exclusion.") (citation omitted). We also note that we do not have extensive case law from the courts of this Commonwealth to guide

us in our decision-making.[12]  Notwithstanding, based on the cases we have discussed applying the 'business pursuits' exclusion supra, it stands out to us that CMC's complaint does not contest specific actions taken by Arnold while he was engaged in his work at PennDOT and, in fact, makes explicit that Arnold's position there had nothing to do with interpreting contracts or billing. Unlike the insureds in Sherman, Soto, and Ericksen, CMC is not seeking to impose liability on Arnold for something he did at, or in the context of, his employment.  See Sherman, supra (applying a 'business pursuits' exclusion where the conditions on the farm, which had been operated as a business by the insureds, contributed to the death of the worker); Soto, 836 F.2d at 836 ("[T]he allegations of the complaint here charge [the insured] with specific actions arising from his business pursuits and indeed [the insured] testified in his deposition that he maintained the buildings in that he hired people to do the maintenance and directed their work."); Ericksen, 903 F.Supp. at 840 (reasoning that the 'business pursuits' exclusion applied to alleged injuries stemming from the insured's first complaint to her employer concerning her colleague as she included it in a memorandum that "was submitted in order to begin proceedings against [the colleague] consistent with the [u]niversity's sexual harassment policy and procedure").

_____

[12] Indeed, the White court began its analysis by recognizing "the relatively limited case law addressing the business pursuits exception in Pennsylvania." White, 775 A.2d at 814.  Since White, there appears to be few cases from Pennsylvania state courts applying the exclusion.

Instead, in the case at bar, all of the conduct CMC complains of were actions taken by Arnold outside of his job. Analogous to the insured's sharing allegedly libelous statements with a newspaper in Ericksen, Arnold made the purportedly false statements regarding CMC in court documents and without PennDOT's support. According to CMC, Arnold pursued the qui tam action because he personally disagreed with how PennDOT officials interpreted the contracts and wanted to benefit himself financially. In its complaint, CMC emphasized that Arnold's position at PennDOT did not involve him interpreting contract requirements or approving billing classifications and rates, and it stressed that he had no authority or responsibility for doing those things. Nevertheless, CMC said Arnold made assertions against CMC regarding overbilling based on his personal interpretation of contract requirements. Further, he purportedly initiated and continued the litigation for 11 years even though he lacked information that CMC made any claim for payment that was false or fraudulent. Thus, at its core, CMC's complaint challenges Arnold's personal conduct, not the performance of his professional duties or actions he took at work. Cf. Sherman, 866 A.2d at 420 ("All of the misfeasances and nonfeasances … allege[d] clearly have as their base the business of farming, not the ownership of a home.").

While Nationwide argues that Arnold would not have had access to the information contained within PennDOT's 'private business records' but for his employment there, see Nationwide's Brief at 59-60, CMC's complaint does not specifically allege where Arnold obtained the information he relied upon, nor

does it state that such information was private and only accessible to PennDOT's employees. At any rate, though, the crux of CMC's lawsuit is that Arnold had no information or proof that CMC made inaccurate factual representations to PennDOT about its inspectors' credentials and qualifications but pursued the qui tam action anyway. Furthermore, that the subject matter of Arnold's complaint concerned matters taking place at PennDOT does not establish a causal connection between how Arnold performed his professional duties and CMC's grievances. Accord Ericksen, 903 F.Supp. at 841 (rejecting the argument that the insured's interview with the newspaper arose out of her profession because its subject matter involved what may have occurred at the university, and determining that "there is no causal connection between the performance of [the insured's] professional duties and the alleged injury suffered by [her colleague]").

Based on the foregoing, we conclude that Arnold's litigation of the supposedly baseless qui tam action against CMC did not arise out of his business pursuits. Again, Nationwide had the burden of proof and failed to demonstrate that the 'business pursuits' exclusion applied here. At bottom, CMC's allegations challenge Arnold's personal conduct, not actions he took or events that transpired in the context of his employment. We decline to construe the 'business pursuits' exclusion so broadly that coverage is precluded for allegations with any nexus whatsoever to an insured's work. Accordingly, we determine that the 'business pursuits' exclusion does not apply, and Nationwide has a duty to defend Arnold in the CMC Action.

In Nationwide's third issue, it argues that "[t]he trial court's order that [Nationwide] indemnify [Arnold] should be overruled because the court abused its discretion and committed [an] error of law in ordering indemnification prematurely[.]" Nationwide's Brief at 65 (unnecessary emphasis and capitalization omitted). Specifically, it says that the trial court's order sets forth that "[Nationwide] has a duty to 'defend and/or indemnify' [Arnold] based on the [Umbrella Policy]." Id. However, Nationwide contends that "[t]he duty to indemnify ... is not triggered until a determination of liability is made. The duty to defend carries with it a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy." Id. at 66 (emphasis in original; citations omitted). Consequently, Nationwide maintains that "a [c]ourt cannot order an insurance carrier to indemnify its insured until the insured has been held liable for the claim." Id. Thus, Nationwide insists that, "while the [t]rial [c]ourt can order no duty to indemnify if the court determines that there was no duty to defend, ... it is premature for the court to conclude that [a] duty to indemnify exists prior to [CMC's] obtaining a judgment ... against [Arnold] in the [CMC Action]." Id. at 67 (emphasis in original).

It appears to us that the trial court and Pushinsky do not disagree with Nationwide.[13] Here, as Nationwide contends, the trial court stated in its order that Nationwide "has a duty to defend and/or indemnify ... Arnold ... for the

_____

[13] Arnold does not address this issue in his brief.

claims made in the underlying [CMC Action]."  See Trial Court Amended Order, 10/11/2018.  However, in its Rule 1925(a) opinion, the trial court elaborated:

> Pennsylvania has held that the language of the underlying complaint, here the CMC complaint, triggers the duty to indemnify.  Kvaerner Metals Div. … v. Commercial Union Ins. Co., 908 A.2d 888, 896 ([Pa.] 2006).  Nationwide will have a duty to indemnify "only where the insured is held liable for a claim actually covered by the policy."  Gen. Acc. Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 ([Pa.] 1997).  The duty to defend also carries with it a conditional obligation to indemnify in the event that the insured is held liable for a claim covered by the policy.  Id. In this case, if the underlying CMC complaint triggers a duty to defend, then it also triggers a duty to indemnify. Kvaerner Metals Div., 908 A.2d at 900.  Here, there is a duty to defend as the business pursuit[s] exclusion does not apply. Likewise, there is also a duty to indemnify if the insured is found to be liable for a covered claim.  Id.  As Nationwide has a duty to defend Arnold in the underlying CMC [A]ction, likewise, Nationwide has a duty to indemnify.

Rule 1925(a) Op. at 7-8.  In accordance, Pushinsky maintains that "the lower court did not commit error in deciding [that] 'there is also a duty to indemnify if the insured is found to be liable for a covered claim.'"  Pushinsky's Brief at 24 (citation omitted).  Thus, it seems like the trial court and the parties all agree that Nationwide has a duty to indemnify if Arnold is found to be liable for a covered claim.

Although the trial court acknowledged in its Rule 1925(a) opinion that "there is … a duty to indemnify if the insured is found to be liable for a covered claim[,]" see Rule 1925(a) Op. at 8, we agree with Nationwide that its order does not clearly reflect that condition and appears to convey that Nationwide has an absolute duty to indemnify Arnold.  Therefore, we reverse that aspect of the trial court's order to the extent it imposes an absolute duty on

Nationwide to indemnify Arnold, and we clarify that Nationwide has a duty to indemnify only if Arnold is found to be liable for a covered claim under the Umbrella Policy.

Order entered on October 11, 2018 affirmed in part and reversed in part. Appeal docketed at 1207 WDA 2018 quashed. Jurisdiction relinquished.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/11/2019